GEORGE H. VOSE & another *vs.* ISAAC M. SINGER & another.

One joint owner of an interest in a patent right cannot maintain a bill in equity against another joint owner, to compel contribution of a portion of the profits of sales of the patented article, in the absence of a special agreement.

CONTRACT, with a prayer for relief in equity, and that the defendants may be decreed to account with the plaintiffs, and pay over to them such sums as may be found to be justly due.

The following facts were agreed in this court: On the 29th of March 1852 the defendants, being the owners of the patent right referred to therein, executed to the plaintiffs, jointly with

William R. Perkins, an assignment, the material portions of which are copied in the margin *; the plaintiffs, as partners, purchasing and holding one undivided half part, and Perkins purchasing the other undivided half part, of the interest and right therein conveyed. On the 10th of December 1852 Perkins assigned his undivided half part to C. G. Andrews, whose administratrix, on the 5th of February 1855, assigned the same to the defendants. Between said 5th of February and the 18th of March 1857, (when the plaintiffs' right terminated,) the parties to this suit owned respectively one undivided half part of the rights under the assignment, and both sold machines containing the patented invention in the assigned territory, for use therein; and the defendants sold such machines, to the number of seventeen, more than were sold by the plaintiffs, a schedule of the sales being annexed, for which they received their pay,

---

* " Whereas Isaac M. Singer, of the city of New York, did obtain letters patent of the United States for certain improvements in machinery for sewing which letters patent bear date the twelfth day of August, in the year one thousand eight hundred and fifty-one; and whereas the said Isaac M. Singer, by an instrument of assignment bearing date the third day of September, in the year one thousand eight hundred and fifty-one, assigned and transferred to Edward Clark, of the city of New York, one third interest in the said invention and letters patent:

" Now, therefore, this indenture witnesseth that we, the said Isaac M. Singer and Edward Clark, being the sole owners of the said invention and letters patent, in consideration of the sum of fifteen hundred dollars, to us paid by Wm. R. Perkins, Geo. H. Vose and Silas E. Southland, of Boston, State of Massachusetts, the receipt whereof is hereby acknowledged, have assigned, transferred and set over, and do hereby assign, transfer and set over unto the said Wm. R. Perkins, Geo. H. Vose and Silas E. Southland, their representatives and assigns, the sole and exclusive right to use, and vend to others to use (but not to build or make) the sewing-machines constructed according to said letters patent, known as Singer's straight needle, perpendicular action sewing-machines, in and for the county of Middlesex, State of Massachusetts, except the city of Lowell, and towns of Tewksbury, Billerica, Dracut, Chelmsford, and one machine in Charlestown, and in and for no other place or places, to be held and enjoyed by the said Wm. R. Perkins, Geo. H. Vose and Silas E. Southland, and their representatives and assigns, to the full end of the term for which said letters patent are granted."

making large profits thereon; but they refuse to account with the plaintiffs therefor, though often requested. Before February 5th 1855 the owners of the interest under the assignment had been accustomed to sell, and account together for all sales and profits.

No question was made as to the form of action.

*T. L. Wakefield,* for the plaintiffs. The general rule is, that part owners and tenants in common are liable to contribution to each other. *Shepard* v. *Richards,* 2 Gray, 424. *Dickinson* v. *Williams,* 11 Cush. 258. *Munroe* v. *Luke,* 1 Met. 463. *Sargent* v. *Parsons,* 12 Mass. 149. *Gowen* v. *Shaw,* 40 Maine, 56. *Albee* v. *Fairbanks,* 10 Verm. 314. There is nothing peculiar in the kind of property owned by these parties, or in the manner of raising income or profits from it, to except this case from the general rule. It was held by virtue of the same title. This excludes either party from holding or employing it independently of the other. Selling machines within the assigned territory is not merely using the common property. Each machine sold diminishes the common property, unless the profits are held for the benefit of both parties. In this case, profits were actually received by the defendants.

*C. Browne,* for the defendants.

CHAPMAN, J. There is not in this country any limitation of the number of persons who may be joint owners of a patent right. In England it is otherwise. English letters patent contain a provision that if they shall at any time be vested in more than twelve persons or partners, they shall become void. But the *St.* of U. S. of 1836, *c.* 357, § 11, makes patents assignable, either as to the whole interest or any undivided part thereof, by any instrument in writing; and licenses may also be granted by the patentees or their assignees to as many parties as they please. Many proprietors of patents have availed themselves of the right to make assignments, and grant licenses to a great extent; and there have been, for many years, a great number of persons interested, as part owners or licensees, in the question whether, independently of covenants or agreements, a right of contribution, in any form or to any extent, exists between such

parties or any of them. The amount of property and the num-ber of persons to be affected by this question must be very great. The question has arisen, and been propounded to counsel, in many instances; but after having made extensive inquiries, we cannot learn that it has ever before been presented to a judicial tribunal in any form. The learned counsel in this case have acknowledged their inability to find any authority in point, and have argued the question principally by analogy. The prevailing sentiment among patent lawyers, we have reason to believe, is adverse to the right; and many of them are in the habit of advising clients to make provision on the subject, as well between part owners as licensees, by special agreements. The analogies which have been suggested by counsel, and those which have suggested themselves to our own minds, are quite unsatisfactory; because a patent right, as it exists in this country, is a species of property so unlike every other species, and is made profitable in so great a variety of ways. The authorities cited for the plaintiffs are those which relate to tenancies in common of real estate. But real estate is made profitable either by occupation with or without cultivation, or by renting it. And if either party is dissatisfied with holding it jointly or in common, he may have partition. But there is no provision for partition of patent rights; and they are so diverse in their nature that no general statement can be made as to the manner in which they are made profitable. Perhaps in a majority of cases the value of the right depends upon the peculiar circumstances and skill of the owner. At common law, no right of contribution existed between tenants in common of real estate. By *St.* 4 & 5 Anne, c. 16, if one tenant collects and receives more than his share of the rents and profits, he is made liable to contribution, and this statute has been adopted in Massachusetts. *Munroe* v. *Luke*, 1 Met. 463. *Calhoun* v. *Curtis*, 4 Met. 413. But the statute has not been held, either in England or here, to extend to patent rights. It may be added, that the law as to the respective rights of part owners of an interest in a patent right should be uniform throughout the United States, and cannot be affected by the law of any particular state in respect to real property.

There is some analogy between a patent right and a right of way. A patent right is a monopoly of a certain way of doing a thing. It is an exclusive right of way, in the region of invention, secured to one for a limited period as a compensation for having first discovered it. It was never held that if one of several owners of a right of way over a tract of land used the way more than the other part owners did, he thereby became liable to them for contribution. The doctrine of contribution has never been held to apply to the use of rights of this character. Yet it would be unsafe to draw any conclusions from this to a patent right, because the analogy is so faint.

There is some analogy between a patent right and a right to take tolls; for the royalty is in the nature of toll for the use of the patented way or method. Both are incorporeal rights; and a patent is sometimes made profitable by simply taking a royalty from those who use the invention, under an assignment or a license. If one tenant in common of a right to take tolls were to receive more than his share, a right of contribution would probably exist on the part of his co-tenant; but it would not be safe to apply the rule to patent rights, because the taking of tolls is simply the receipt of money for the use of the common property, but the use of patent rights and the contracts for royalties usually include other elements. The present case illustrates this remark. Each part owner sells his machines for a price supposed to include a royalty. But he must first invest money in the purchase of machines. Then he must expend labor, skill and money in finding purchasers. And at the last, he must take the risk of losses. And each of these elements, and several others relating to the proceedings of the other party, must enter into an equitable adjustment of a contribution.

A patent right is a chattel interest; therefore a tenancy in common or part ownership in it is much like tenancy in common or part ownership of other personal property. But the use of a patent right is different from the use of any other property; and therefore it is not safe to follow the rules adopted in regard to the mutual liabilities of part owners of ships, horses, grain, liquor, &c. It would not be safe to conclude that, because the

owner in common of a horse is not liable though he retains the exclusive use of him, therefore the part owner of the patent who uses it exclusively is not liable; nor because the tenant in common of the grain or liquor who uses it exclusively and consumes it in using is liable, therefore the part owner of the patent is liable. There is a possibility that the part owner of the patent may so supply the market as to appropriate to himself the whole value of the patent; and, on the other hand, his use of it may have the effect to create a market so extensive as greatly to enhance the value of the whole patent. On the whole, then, we are compelled to reject all arguments from analogy, and look at the question upon its own apparent merits.

There is nothing restrictive in the grant of the defendants to the plaintiffs and Perkins, dated March 29, 1852. It assigns to them, their representatives and assigns, " the sole and exclusive right to use and vend to others to be used (but not to build or make)" the machines in question, within the territory specified. It is agreed that Perkins was the purchaser of one half the right, though this is not indicated in the assignment; and that this proportion of it was repurchased by the defendants from the administratrix of Andrews, to whom Perkins had sold his share. But the language used seems to convey to one as full a right to use and sell the machines as another. It is not in any respect distributive. Terms might easily have been used which would indicate the extent to which each party might use the right, and his liability in case he used it beyond the limitation specified; but such terms are omitted.

There is nothing to restrict the party owning each moiety of the right from selling and assigning that moiety, or any fractional part of it, or as many fractional parts as he pleases. Each may purchase as many machines as he pleases; and having purchased them, he may sell them to others with the right to use and sell them; or may refuse to sell them, and may rent them, or establish manufactories, either alone or in company with others, in which the machines shall be used. Or either party may neglect or refuse to purchase, use or sell any machines or any rights, or to make his moiety profitable in any way. The

right is thus subject to transfers and subdivisions, and may be used in a great variety of ways. None of the parties interested has any right to control the action of the other parties, or to exercise any supervision over them. It is difficult to see how an equitable right of contribution can exist among any of them, unless it includes all the parties interested, and extends through the whole term of the patent right. And if there be a claim for contribution of profits, there should also be a correlative claim for losses, and an obligation upon each party to use due diligence in making his interest profitable. It is not and cannot be contended that these parties are copartners; but the idea of mutual contribution for profits and losses would require even more than copartnership. Nothing short of the relation of stockholders in a joint stock company would meet the exigencies of parties whose interests may be thus transferred and subdivided.

But even as between the original parties, as there was no mutual obligation to contribute for losses, or to use any diligence to make the property profitable, and as each party was at liberty to buy, use and sell machines at his pleasure, and to sell his moiety of the right, or fractional parts of it, we think no obligation arose out of the part ownership, as being legally or equitably incident to it, to make contribution of profits. But in the absence of any contract, we think each party was at liberty to use his moiety as he might think fit, within the territory described. If the defendants have realized any profit in the manner alleged, it has been by investing capital in the purchase of machines, and the use of skill and labor in selling them; and they have taken the risk of losses. Apparently there is no more reason why the plaintiffs should claim a part of the advanced price for which they may have sold their machines, than there would have been for claiming a part of the price if they had sold their right itself for an advance. It may possibly be that the sale of the seventeen machines so far supplies the market that *the plaintiffs' moiety of the right is greatly reduced in value*; but if it be so, the consequence is very remote, and dependent upon a great variety of causes. There have been patented articles in respect to which such a sale would have greatly

enhanced the value of the other moiety of the right, by its tendency to create a demand. Such a consequence would also be remote.

These parties must be regarded as having interests which are distinct and separate in their nature, though they are derived from the same contract; and having such interests, with the right to use them separately, they cannot for any legal use of them incur any obligation to each other. *Plaintiffs nonsuit.*