McDUFFEE et al. v. HESTONVILLE, M. & F. PASS. RY. CO. et al.

(Circuit Court of Appeals, Third Circuit. June 5, 1908.)

No. 32.

1. TRUSTS—VALIDITY AND CONSTRUCTION—ASSIGNMENT OF PATENT IN TRUST.

An instrument conveying a patent to one in trust for himself and others named, without power to sell the same, creates a valid trust entitled to the protection of a court of equity as a legitimate and peculiarly appropriate means, in view of the nature of the property, of securing the rights of all the joint owners by preventing the use of the patented invention or the granting of licenses to use it except by the trustee for the benefit of all. Under such a trust the trustee cannot convey the legal title, or any part of it, without the consent of all of the equitable owners.

2. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—CONTRACT BY TRUSTEE.

A contract made by one to whom the legal title of a patent has been conveyed in trust for himself and others named, without power to sell, by which as trustee he agrees to sell and convey the patent, cannot be specifically enforced even as to his own equitable interest by the purchaser, who is charged with notice of the trust and its limited character and of the rights of the other joint owners thereunder which would be destroyed by such sale.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinions below, see 154 Fed. 201, and 158 Fed. 827.

Charles P. Abbey, Thomas F. Sheridan, Clifton V. Edwards, and Jos. C. Fraley, for appellants.

C. L. Buckingham and John G. Johnson, for appellees.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, John I. McDuffee, trustee, brought suit in December, 1896, against the Hestonville, Mantua & Fairmount Passenger Railway Company, for infringement of patent No. 546,059. That patent had been applied for by William Schlesinger on application No. 183,871, and was later issued to said McDuffee as trustee by virtue of certain writings hereinafter recited. In October, 1906, McDuffee, trustee, and the Allis-Chalmers Company by leave filed a supplemental bill which averred the former and his cestuis que trustent had on June 16, 1906, assigned all their interest in this suit and the patent to the Allis-Chalmers Company. The General Electric Company, the maker of the alleged infringing device, had been defending this suit, and it then applied for leave to intervene as a defendant by reason of the fact that prior to June 16, 1906, it became owner of the patent by an agreement of McDuffee to sell. It alleged the Allis-Chalmers Company had bought with notice of its title and by leave filed a cross-bill to annul the Allis-Chalmers purchase and to compel specific performance by McDuffee, trustee. Testimony was taken, and the question of ownership disposed of on final hearing of the supplemental and cross-bills. The cestuis que trustent of McDuffee, trustee, were not made parties. In an opinion reported in 154 Fed. 201, the court below held it could not decree specific performance of the contract made by McDuffee, trustee, with the General Electric Company, which was for $20,000, saying:

"If, therefore, I repeat, the assignment of June 16th, to the Allis-Chalmers Company had never been made, the electric company could not be granted the decree of specific performance for which the cross-bill prays. The agreement of which the court is asked to compel the performance is an agreement to convey the whole title, and undoubtedly the electric company would be content with no less. But as McDuffee could not convey what he never had, and as the court has no power over persons who are not parties to the cross-bill—even if it were true, as it is not proved, that they authorized or ratified McDuffee's agreement to sell their interests to the electric company—manifestly a decree of specific performance would be out of the question."

On further hearing, however, the court subsequently entered a decree that on payment of $6,666.67, by the electric company, being one-third of the stipulated price, it "shall become the owner of an undivided one-third part of the entire right, title, and interest, both legal and equitable, of, in, and to (naming the patents), and that the said John I. McDuffee shall thereupon execute and deliver to the said General Electric Company an absolute assignment of such an undivided one-third part of the entire right, title, and interest, both legal and equitable, of, in, and to said patents." From such decree McDuffee and the Allis-Chalmers Company appealed.

As the facts are fully set forth in the court's reported opinion, they need not be repeated. The decisive question is the effect given to the instrument which vested title to the patent in question and created the trusteeship in one Schlesinger. On January 22, 1894, one Williams, being the owner, inter alia, of the application on which the patent in suit was issued, conveyed the same by writing to Schlesinger. The material parts of said conveyance are as follows:

"To all whom it may concern: Be it known that for and in consideration of the sum of one dollar in hand paid, and of other valuable consideration, the receipt whereof is hereby acknowledged, I, Alfred H. Williams, have sold, assigned and transferred, and by these presents do sell, assign and transfer unto William M. Schlesinger and his assigns and successor in trust as herein provided all my right, title and interest in and to or choses in action under letters patent of the United States, as follows: * * * To have and hold the same unto the said William M. Schlesinger, his assigns and successors, in trust to the full end of the term for which said letters patent or extensions or renewals thereof are or may be granted, or until the trust herein declared has been ended. The said William M. Schlesinger and his successors in the trust to have and hold the same in trust without the power to sell, incumber or otherwise dispose of said patents and applications, renewals, extensions or other interests therein or obtained thereon for the following named persons, to wit: William M. Schlesinger, Susan E. McDuffee and the said Alfred H. Williams."

Subsequently, McDuffee was substituted as trustee, and at the time of the sales in suit the cestuis que trustent under this instrument were Alfred H. Williams, William M. Schlesinger, and John I. McDuffee, each of whom owned a third.

It seems to us that the peculiar nature of the subject-matter of this instrument made the trust sui generis and one in the administration of which equity would correspondingly modify the familiar principles incident to trust estates generally. Patents are personal property (Shaw Company v. New Bedford [C. C.] 19 Fed. 753), and "such property has nothing hereditary in its nature, but simply belongs to its owner for the time being. Hence a gift of personal property to A. simply, without more, is sufficient to vest in him the absolute interest. Whilst, under the very same words, he would acquire a life interest only in real estate, he will become absolutely entitled to personal property. * * * The privileges granted by letters patent are plainly an instance of an incorporeal kind of personal property, which, as personalty, in the absence of context to the contrary, would go to the executor or administrator in trust for the next of kin." De La Vergne Machine Co. v. Featherstone, 147 U. S. 209, 222, 13 Sup. Ct. 283, 37 L. Ed. 138. That the intention of the owners of these patents was that the legal title thereto should be vested in the trustee alone, and that he should not be able to sell them without the consent of the owners, is unquestioned. Now, why should not a status of their property thus made be maintained? No public policy, no principle of ownership, no interdict of perpetuities, or restraints on alienation forbid or call for their application to a patent which at most is a mere privilege to monopolize an invention for a few years; but, while there is no reason to forbid owners from thus vesting the legal title of patents in others while retaining equitable ownership in themselves, there are considerations which make such a result highly desirable. Joint own-

ers of a patent are at the mercy of each other. Each of them may use or license others to use the invention without the consent of his fellows and without responsibility to such fellows for the profits arising from such use or license. Clum v. Brewer, 2 Curt. 523, Fed. Cas. No. 2,909; Aspinwall Mfg. Co. v. Gill (C. C.) 32 Fed. 697; Walker on Patents, § 294.

It will therefore be seen that, to preserve their joint property. and prevent its practical destruction by co-owners, it is imperative that all should be permitted to simply vest the legal title in one without imposing any active duties on such holding trustee, and this shows that, while there are no express duties for the trustee to perform, it by no means follows the trust is a dry or inactive one. As holder of the legal title he can bring suit, enjoin infringers from destroying the patent, and the mere holding of the legal title in trust per se preserves the patent for the common good and prevents its destruction by each co-owner. We are of opinion that these views have actuated patent practitioners in thus vesting the legal titles to patents in trustees, and that a holding that such an instrument, contrary to its plain intent, executed itself and left the equitable owners as free to use and license as before would be most unfortunate in its unsettling effects. The intent and effect of this instrument we therefore hold was to vest and retain the legal title to this patent in McDuffee, as trustee; but the equitable ownership thereof remained in his cestuis que trustent, and without their consent he could not convey such legal title, or any part thereof. This works no injustice to the General Electric Company, for it had such notice of the rights of the cestuis que trustent when it took the option of which it asked specific performance as put it on notice. That option was given by McDuffee, who signed himself as trustee, and this fact alone gave notice to any one dealing with him of such facts as inquiry in reference to the terms of the trust would have disclosed. Duncan v. Jaudon, 82 U. S. 165, 21 L. Ed. 142; Flitcraft v. Com. Title Ins. Co., 211 Pa. 119, 60· Atl. 557, and cases there cited.

The suit the General Electric Company had defended was brought by McDuffee, as trustee, and the latter, in his testimony in response to an inquiry by the counsel for the Electric Company, by whom the option was taken, had said:

"At present, I hold the patent as trustee for others, and, besides this legal title, I also own an equitable interest in it."

Moreover, in reporting the taking of this option to the company the day after it was taken, counsel wrote:

"Mr. McDuffee has just come to my office in connection with a renewal of our compromise negotiations, and the letter which I inclose is his present offer. * * * Mr. McDuffee says he must have $17,500 for himself and associates and * * * the further $2,500 for compensating his counsel."

When therefore the electric company took the option from McDuffee as trustee, which provided:

"I will give your company, the General Electric Company, an option until June 9th to acquire all right, title and interest in all letters patent upon which suits have been brought by me, * * * and also the control of said

suits and all rights of action under said patents * * * for the sum of $20,000"

—it knew it was contracting, not with the owners of the patent, but with their trustee, and the fact that he was a trustee was notice to them of his trust and its limited character, which was "in trust to have and hold the same without the power to sell, incumber or otherwise dispose of said patent," etc. Such being the case, and the cestuis que trustent not having ratified such attempted sale, it is clear the purchaser was entitled to no decree to affect their interest. But this the court has done by its decree. While conceding that specific performance cannot be decreed for the entire patent, it has in practical effect struck down the trust by decreeing that McDuffee convey one-third of the patent with the same force and effect as though his one-third of it was unshackled by the trust. As noted, McDuffee was decreed to convey "an undivided one-third part of the entire right, title, and interest, both legal and equitable, of, in, and to said letters patent." The practical effect of this would be that the General Electric Company would be free to make, use, vend, and license under this patent without accountability to McDuffee's co-owners.

Whatever its remedies against McDuffee may be, and without prejudice to such rights and remedies, we are clear the decree complained of must be reversed, with directions to dismiss the cross-bill.