**BENDIX AVIATION CORPORATION**
**v. KURY.**

Civ. A. No. 9652.

United States District Court
E. D. New York.

Jan. 17, 1950.

Hughes, Hubbard & Ewing, New York City (Horace Dawson, Chicago, Ill., Charles C. Tillinghast, Jr., New York City, Dugald S. McDougall, Chicago, Ill., and Robert H. Harry, New York City, of counsel), attorneys for plaintiff.

Bartlett, Eyre, Keel & Weymouth, New York City (Richard Eyre, New York City, of counsel), attorneys for defendant.

BYERS, District Judge.

The plaintiff company, successor to the exclusive licensee under a written agreement last amended May 12, 1939, seeks a declaratory judgment to establish that certain devices which it makes and sells are not covered by the patents of the license in terms, or at least as properly construed.

The defendants are the two licensors, but one of them, Charles A. Brewer, is not a party to this action, service as to him having been quashed, and the action has since proceeded in all respects as though he had not originally been named as a defendant.

Motion for summary judgment dismissing the complaint has heretofore been denied (2 Cir., 85 F.Supp. 581) by Judge Kennedy.

The complaint seeks a declaration on the part of Bendix concerning its right to make and vend a vacuum powered cylinder, the office of which is to furnish power in an automobile to assist in operating the gear shift; and also and separately, a like device to perform a like function in the semi-automatic transmission element. For convenience, these are called the "Chevrolet device" and the "Chrysler device".

The cylinder in question is actuated in response to the partial vacuum created in the intake manifold of the engine.

It is asserted that the device falling within the coverage of the license agreement had to do with a vacuum actuated cylinder which supplied power to assist in the engagement of the clutch, and that the Brewer patents are not infringed in respect of these two other and different mechanisms.

The cause went to trial and all of the plaintiff's testimony on the merits was taken, as well as that offered in connection with the legal issues about to be stated; the defendant Kury did not take the stand, and in effect rested by tendering no evidence on the merits, confining his proof to matters of record.

The defendant's argument is that this Court will not reach a consideration of the patent coverage under the license agreement, namely, the issues of infringement and validity if some of the defendant's patents were to be accorded the scope claimed for them, by reason of the substantial questions of law which constitute a series of road blocks to a course which otherwise would lead to a decision on the merits.

It will be convenient to list them as they were stated in the motion to dismiss or for summary judgment for the defendant, at the close of the case:

1. That Charles A. Brewer, a co-owner of the patents comprehended in the license agreement, is an indispensable party, whereby no effective adjudication of this cause is possible.

2. That the original licensee, Bragg-Kliesrath Corporation, a New York corporation, to be called B-K, is an indispensable party; and that it was not joined in order to avoid the objection that diversity

of citizenship between the plaintiff and that corporation is lacking.

3. No judgment herein "would necessarily determine the entire controversy inasmuch as any decision in part or in whole favorable to the defendant would require reliance upon the judgment in the state court to determine the recovery to which the defendant may be entitled". The reference is to a suit in the Supreme Court of New York in which Brewer and Kury were plaintiffs and Bendix Aviation Corporation and Bragg-Kliesrath Corporation (the original licensee) were defendants, in which the plaintiffs recovered a judgment for royalties on the theory that the defendants named had breached the contract set forth in the same license agreement, by failing to pay royalties upon the said devices concerning which the plaintiff here seeks declaratory judgment as above stated. The judgment in that case was rendered September 30, 1949, and is said now to be on appeal to the Appellate Division First Department.

The legal effect of that judgment presents one of the searching issues in this cause. Cf. MacGregor v. Westinghouse Electric & Manufacturing Co., 329 U.S. 402, particularly at page 407, 67 S.Ct. 421, 423, 91 L.Ed. 380.

4. The controversy stated in this complaint was in issue in the state cause when this complaint was filed, whereby a declaratory judgment here would constitute a vexatious and gratuitous interference with the orderly disposition of that litigation, and a misuse of the declaratory judgment procedure contemplated by the federal act. 28 U.S.C.A. §§ 2201, 2202. Reliance is had upon expressions occurring in the opinion of the Court in Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620, rather than upon any resemblance to the issues discussed.

5. This plaintiff is estopped from presenting its cause since:

A. The license agreement is an existing contract which provides not only for protection against infringement suits by the patentees, but the right to sue other alleged infringers.

B. No ruling respecting invalidity or restricted scope of the patent claims by a court of competent jurisdiction could be effective upon a preexisting royalty obligation.

C. This agreement in terms required the licensee to obtain full patent protection on all inventions covered by the agreement.

In this connection, it should be stated that when the agreement was written it recited, by number, six applications for patents then pending in the Patent Office, and provided that all of said applications "shall be solicited by counsel" for the licensee which agreed "to use its best efforts to obtain full patent protection on all inventions covered by this agreement".

From this, it is to be seen that the licensee's present attempt to limit the scope of the patents as issued, seems to put it in an equivocal position.

6. This action was commenced after an unnecessary delay in an effort to prevent an orderly disposition of the state court litigation, to obtain a different jurisdiction from that selected by the licensors and thus to gain a possible benefit through res judicata as to the state litigation.

The plaintiff herein is a Delaware Corporation, and the defendant Kury is a citizen of New York, residing in this district. The said Brewer is a citizen of Connecticut, where he resides.

Bragg-Kliesrath Corporation (called B–K) is a New York corporation, and was the original licensee.

Bendix Aviation Corporation owns all the stock of Bendix Products Corporation and also of B–K, which it acquired in 1930, the year before the license agreement in its original form was entered into.

It is deemed to have been shown for present purposes, which is intended to be less than a finding of fact, that in 1932 all of the assets and properties of B–K, except an account receivable from Bendix Aviation Corporation, were transferred to Bendix Products Corporation; and that in 1938 the latter conveyed all of its assets to the Aviation Corporation; it is in all respects likewise deemed to have been

shown, therefore, that Bendix Aviation Corporation succeeded to this license agreement, and has assumed all obligations thereunder since 1940. This means that it has paid license fees to Kury and Brewer upon devices which it concedes that it has made and sold under and by virtue of the license agreement.

On June 28, 1947, Kury and Brewer brought suit in the Supreme Court of New York against Bendix Aviation Corporation, henceforth to be called Bendix, and B–K, alleging default in the payment of royalties according to the terms and conditions of the license agreement. The pleadings in that case are imported into this record since the judgment roll is annexed to and forms part of the supplemental answer herein of Kury. The pleadings can be examined for a more extended description of the issues litigated in the state court action, which it will be recalled resulted in a judgment in favor of Kury and Brewer on September 30, 1949, following a jury trial.

The complaint herein was filed on January 10, 1949, and describes the controversy in paragraph 10 as involving the right of Bendix to make and sell the devices enumerated in paragraph 6, thus: "Defendants assert that Bendix has no right to make and sell said devices except on pain of incurring liability to them for royalties under said license agreement * * * Defendants have commenced an action in the Supreme Court, New York County, against Bendix and B–K directed to recovering judgment against Bendix and B–K for royalties alleged to be owing on account of past manufacture by Bendix of said devices enumerated in paragraph 6". Another action "to obtain an extension until 1952 of the royalty obligations under the aforesaid license agreement" is also averred. Those actions are said to "have created uncertainty with respect to the financial liabilities incidental to the manufacture and sale by Bendix of the devices enumerated in paragraph 6".

In paragraph 11, the defendants are said to have threatened a customer of Bendix to bring suit for patent infringement.

In passing, it is stated that there was no sufficient evidence offered to sustain that allegation.

The other allegations of the complaint in substance aver that the assertions of the defendants render Bendix "financially insecure" in respect to the sale of such devices (a claim which seems not to have been pressed), and present the threat that Bendix or its customers may be compelled to defend a multiplicity of suits by Kury and Brewer, wherefore a declaratory judgment at the behest of Bendix should be had, "clearly defining its right freely to make and sell the devices enumerated in paragraph 6 without obligation * * * to defendants on account thereof".

Under the heading of "Invalidity and Non-infringement", the complaint refers to four patents presumably issued in response to the applications listed in the license agreement, which follow the assertion of paragraph 13, that Bendix is obligated to pay royalties to the defendants "only with respect to devices which, in the absence of a license, would infringe valid claims of the patents licensed thereunder".

Then follow allegations appropriate to challenge the validity of certain claims of the four patents; and procure a declaration of non-infringement as to the devices in question. The prayer for relief is for a judgment which would be appropriate to the disposition of a usual patent cause.

It is unnecessary to refer to the defendant's pleadings which, as most lately amended, are sufficient to raise all issues presented by the motion to dismiss (as well as the questions of infringement and validity), which it is now necessary to discuss.

1. The defect in parties as to Brewer:

There is no dispute that, as to Letters Patent No. 1,908,471, No. 2,072,999, No. 2,104,580, and No. 2,346,149, referred to in paragraph 14 of the complaint, "Kury and Brewer each owns an undivided one-half interest", for such is the allegation of paragraph 7 of the complaint, which is admitted in the answer.

The Court is thus required to decide at the outset whether that defect is fatal to the cause.

It may be thought that the subject has already been disposed of in the motion decided by Judge Kennedy to which reference has been made, and by an earlier decision by Judge Abruzzo on February 23, 1949; he was confronted with a motion to dismiss on several grounds, including the defect in parties covered by points 1 and 2 of the present motion; among other things, the pendency of the state litigation was urged upon him. He said in part: "I am reluctant to dismiss the cause of action before me as I believe it would be better to have a trial on the merits. * * * under all the circumstances the motion is denied."

■ Judge Kennedy seems either to have adopted the views quoted, or to have felt that he was concluded by them, in denying the motion for summary judgment. In this state of the record, I venture to think that so important a question as the indispensability of one of the two owners of these patents has not been so resolved as to constitute "the law of the case".

It seems necessary to examine into it so that the issue may be definitely disposed of so far as this Court is concerned.

■ The fact that Brewer has chosen not to submit himself to the jurisdiction of this Court when it would have been easy to do, since he was represented by the same attorneys in the state court suit as appear for Kury in this case, cannot play any part in deciding the question. If the law is with him, he has a clear right to take advantage of it.

The requirement of Federal Rules of Civil Procedure, Rule 19(a), 28 U.S.C.A., is that "persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants". The attempt to comply with that requirement, as to Brewer, came to naught, as has been stated.

If Brewer is not indispensable, yet ought to be a party, then judgment in this cause is permitted, but it would not affect his rights or liabilities (id. (b), since jurisdiction over him could be acquired only by his consent or voluntary appearance. As to that, the efficacy of a declaratory judgment which would be binding upon Kury alone is one aspect of the question posed by this branch of the motion to dismiss.

■ In Professor Moore's treatise on Federal Practice, the problems encountered in applying this provision of the Rules is discussed with characteristic completeness; two observations may be quoted, the first (Vol. 3, p. 2198) being derived from the classic opinion in Shields v. Barrow, 17 How. 136, 15 L.Ed. 158, as follows: "Where such a community of interest (among several parties) exists that no decree can be rendered without affecting the interest of the absent party, that party is indispensable". It follows that, if the community of interest between Brewer and Kury is such that no decree can be rendered without affecting Brewer's interest, he is indispensable.

■ The second has to do with a declaratory judgment suit (id. p. 2197): "Obviously, an indispensable party must be joined in a declaratory judgment action, just as in any other, since the court could not proceed to enter an equitable judgment in the absence of such a party." The possible departures from that rigid standard as suggested in the notes have been examined and none deals with an absent co-owner of a patent in a cause in which validity and infringement are tendered as the underlying causes of the "existing controversy".

Some understanding must be sought of the theory of the law concerning the nature of the property right created by the grant of Letters Patent, and particularly co-ownership therein, if the motion is to be dealt with according to the teaching of prior cases.

■ Since the right is of purely statutory origin (Crown Die & Tool Co. v. Nye Tool Works, 261 U.S. 24 et seq., 43 S.Ct. 254, 66 L.Ed. 407) the construction given to the statutes is decisive. The right is a grant to exclude others from making, using or vending the invention as an incident of "the common law right to make, use and vend".

With that understanding, the legal incidents of part ownership seem to require discussion:

■ It has been held that such a grant to two persons vests each with an undivided half-interest, creating the relation of co-tenants: Drake v. Hall, 7 Cir., 220 F. 905.

■ Also that "Joint owners of a patent are at the mercy of each other. Each of them may use or license others to use the invention without the consent of his fellows and without responsibility to such fellows for the profits arising from such use or license." McDuffee et al. v. Hestonville, M. & F. Pass. Ry. Co., 3 Cir., 162 F. 36, 38. See also Blackledge v. Weir & Craig Mfg. Co., 7 Cir., 108 F. 71, and Lalance & Grosjean Mfg. Co. v. National Enameling & Stamping Co., 2 Cir., 108 F. 77.

In the former of these, the early case (1862) of Vose v. Singer, 4 Allen 226, 86 Mass. 226, 81 Am.Dec. 696, is quoted to the effect that such a part ownership is a chattel interest in the nature of a tenancy in common, but that the use of a patent differs from the use of other property, hence it is not safe to follow the rules as to part owners of ships, horses, grain, etc. That all argument based on such analogies must be rejected and the question must be looked into on its own apparent merits. The action was for an accounting by the owner of a half interest in a patent against his co-owner, and the bill was dismissed since no special agreement between the parties would support it.

These cases, and others to the same effect, declare that one co-owner, acting independently, can effectually license a third party to make, use and vend. See, for instance, Talbot et al. v. Quaker-State Oil Refining Co., 3 Cir., 104 F.2d 967.

The contrary view had been suggested in 1887, by Mr. Associate Justice Bradley, sitting as a Circuit Judge, in Aspinwall Mfg. Co. v. Gill et al., C.C. 32 F. 697, 702, who said, in holding that a part owner of a patent could not sue for infringement by another part owner: "The exact mutual rights of part owners of a patent have never yet been authoritatively settled. If one part owner derives a profit from the patent, either by using the invention, or getting royalties for its use, or purchase money for sale of rights, it would seem that he should be accountable to the other part owners for their portion of such profit. * * * But this is matter of mere speculation, so far as this case is concerned."

Seemingly the rule has been established to the contrary in the cases cited, notably Blackledge v. Weir & Craig Mfg. Co., supra, but the quotation is indulged to show that views upon the subject have not been entirely in accord.

As to the indispensability of one co-owner of a patent as a party to an infringement case, the following early cases have been found: Van Orden v. Mayor, etc., of Nashville, C.C., 67 F. 331, and Carpenter v. Eberhard Mfg. Co., C.C., 78 F. 127. The more recent decisions are:

Gibbs v. Emerson Electric Mfg. Co. et al., D.C., 29 F.Supp. 810:

Here an infringement suit was dismissed on motion because one defendant was a one-half owner of the patent in question, and had refused to make common cause with the plaintiff, owner of the other half. The Court says, after reviewing some cases noted above: "* * * it appears that one joint owner or co-owner or tenant in common of a patent right cannot compel the other co-owner to join in a suit for an infringement, and neither can he make him a party defendant. This being the law, the plaintiff is not entitled to maintain this suit."

This case and the other about to be mentioned are viewed somewhat askance by Professor Moore (Vol. 3, pp. 2149, 2150) concerning the results to which they lead, although it is not understood that he criticises the decisions as such.

Rainbow Rubber Co. et al. v. Holtite Mfg. Co., Inc., D.C., 20 F.Supp. 913:

Motion to dismiss a patent infringement suit where one co-owner of a patent joined the other without its consent, as party plaintiff. The practice was sought to be justified under the case of Independent Wireless Telegraph Co. v. Radio Corporation of America, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357, in which it had been successfully employed by an exclusive licensee

who sued an alleged infringer, by bringing in unwillingly the patentee itself.

The distinction between the holding by a patentee of title to the patent in trust for the exclusive licensee on the one hand, and the absence of such a relationship on the part of one of the two co-owners of the patent to the other, is clearly and convincingly demonstrated by Judge Coleman; see the discussion 20 F.Supp. on page 915, second column.

█ This case also makes clear that a patent may not "be considered a res with a definite situs within the district where suit is brought" in view of the nature of the patent grant. This means that substituted service pursuant to Title 28 U.S.C. § 118, now 28 U.S.C.A. § 1655, as revised, might not be employed.

That subject had been decided in an infringement case, Automotive Products Corporation v. Wolverine Bumper & Specialty Co. et al., 6 Cir., 15 F.2d 745, by Circuit Judge Denison. Certiorari denied 275 U.S. 565, 48 S.Ct. 122, 72 L.Ed. 429.

Apparently the law in this circuit is the same, as to an action to remove cloud on title to Letters Patent. See Non-Magnetic Watch Co. v. Association Horlogere Suisse of Geneve et al., C.C., 44 F. 6, decided in 1890 by Judge Lacombe, whose opinion is quoted in Standard Stoker Co., Inc., v. Lower et al., D.C., 46 F.2d 678, at page 681, where an assignment of a patent was involved rather than co-ownership.

A contrary concept of the essential nature of infringement and validity causes would have avoided many of these controversies.

The foregoing cases cite Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923, in which it was decided that an infringement cause in equity must fail at the instance of one who was a licensee as the result of transactions related in the opinion, where a mortgagee of the whole title to the patent was not the plaintiff. The case is said to establish that co-owners of a patent must sue jointly in an infringement cause, and certainly that is stated 138 U.S. on page 255, 11 S.Ct. at page 335, where the Court discusses the right of a patentee to assign an undivided part of his exclusive right created by the patent, which carries with it the title in so much of the patent itself, "with a right to sue infringers * * * jointly with the assignor".

█ Two concepts emerge from these cases concerning the status of co-owners of a patent, (a) one, acting alone, can license a third person to make, use and vend, without incurring legal liability to his co-owner, and (b) one co-owner is an essential, i. e., an indispensable party to an action in which infringement is charged.

Perhaps unnecessarily, it has occurred to me that it might be thought that there is an element of inconsistency presented by these developments, in that, since Kury would have the legal right to consent to a declaratory judgment such as plaintiff seeks, he would thereby be doing nothing more than he could accomplish directly by assigning his one-half ownership to Bendix in the patents referred to in paragraph 6 of the complaint, which would be within his legal competence; and that the necessary implication is that, therefore, Brewer is not an indispensable party.

No such argument has been made, and perhaps it is entirely vacuous; however, if it were to be considered plausible, the answer seems to lie in this:

Such an act of Kury's in circuitously granting a license to Bendix would be his own, not that of the Court, even if the latter were so improvident as to enter such a consent judgment, in face of the decisions sustaining the second concept above stated. Such a lapse could scarcely survive challenge in any case, for it would purport to forfeit Brewer's claim to royalties based upon his status as a co-owner, in a cause to which he was not a party and in which he had not been heard.

If there is an inconsistency between these two lines of decision, and perhaps that is the surface appearance, there is little difficulty in deciding which of the two must give way.

That which declares the essential nature of the right created by the patent grant, namely, the right to exclude, is of the essence, and is not diluted through being

shared between two, or among more persons. The right to convey such part ownership, or to issue a valid license by way of carving out something from the part ownership, is the result of joint tenure of the right arising from the grant, as the courts have found it expedient to declare. It is a secondary development, so to speak, and cannot be deemed to have been sanctioned as an instrument of destruction, in part, of the primary right as defined by the Supreme Court. These two conceptions of the legal status implicit in co-ownership of patents have proceeded in parallel, and were never expected to converge, and so either can be recognized and followed without doing violence to the other, unless this Court is completely in error.

The plaintiff argues that Brewer is not an indispensable party in light of A. L. Smith Iron Co. v. Dickson, 2 Cir., 141 F.2d 3, 6. In that case, a judgment of dismissal was reversed in a declaratory judgment cause brought by one who may be deemed to have been threatened with a possible infringement suit as to a patent owned in England, and under which a license had been issued to the defendant.

The factual situation and the terms of the license were somewhat unusual and can be understood only by examining the opinion. The Court says: "It (the patentee) has plainly used him (the licensee) to enforce its patent, and if it has not surrendered its choice of a forum, at least its interest in that choice has dwindled too much to stand against the plaintiff's." At the outset of the part containing that passage, the Court said: "In the case at bar the Cocks company (the patentee) can avoid that prejudice (preserving the patent from the 'stain of a judgment of invalidity') by intervening in this action; and indeed it must be given the opportunity to do so."

The plaintiff would apply a parity of pressure upon Brewer, and if the Smith case so requires, its position is sound, but I am unable so to interpret it. It seems clear that there was disclosed to the Court such a unity of interest on the part of Cocks and Dickson as to invoke something akin to the principles of agency, so as to

permit the case to go to decree on the merits, reserving to the patentee whatever might remain to it if the invitation to submit to jurisdiction were to be declined.

If it could be shown that the legal relationship resulting from co-ownership of a patent involved something resembling agency on the part of one co-owner toward another, perhaps it would be proper to apply here the teachings of that decision; however, the cases examined, and referred to above, seem necessarily to point to an opposite conclusion.

Also the plaintiff cites Bakelite Corporation et al. v. Lubri-Zol Development Corporation, D.C., 34 F.Supp. 142, 144. This was a declaratory judgment suit by alleged infringers against a patent owner; the latter had issued a license which the Court held was not exclusive "in the sense in which that term is used in the decisions dealing with the joinder of exclusive licensees in equity suits for infringement of patents".

A motion to dismiss was denied because of failure to join the licensee, and the Court remarked that technicalities of equity practice do not prevail in declaratory judgment suits.

■ That is probably true, as is also the familiar principle that the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, introduced no new substantive rights, and is a remedial statute in the procedural sense. That has been written so often that citation seems superfluous.

■ If Brewer would be an indispensable party to an action for infringement, he is none the less so in a declaratory judgment suit having for its objective a declaration that infringement does not exist, which is but the same thing in reverse.

This is a conclusion which has been come to reluctantly and only because it seems that any other disposition of the motion to dismiss would do violence to the law as it has been thus far declared respecting the legal status of co-owners of a patent.

Much that is said in criticism of Brewer's refusal to submit to the jurisdiction of this Court would be tempered by a study

of the litigation in the state court to which he was a party plaintiff, in the light of what was written and decided in Luckett v. Delpark, Inc., et al., 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703.

It follows that, for failure of the indispensable party, Brewer, the defendant's motion to dismiss must be granted, and the other bases of that motion do not require discussion.

Settle order granting motion to dismiss on the ground stated.