## AMERICAN CONE & WAFER CO. v. CONSOLIDATED WAFER CO.

(Circuit Court of Appeals, Second Circuit. December 11, 1917.)

### No. 55.

PATENTS ☞202(1)—ASSIGNMENTS—"IMPROVEMENTS."

The patentee of a device for baking ice cream cones made from batter assigned the patent, together with all rights and privileges thereunder, as well as all improvements that might be made thereto or thereunder. Thereafter the patentee invented a new device for baking ice cream cones, which, while bearing a resemblance to the original, was of a radically different mechanism. *Held*, that the assignment did not include the latter device, for an improvement, while it need not necessarily be a physical addition to the machine, leaving all its parts unchanged, does not necessarily include all changes which leave the chief features as before, and hence, the latter device being distinct from the former, it did not pass under the assignment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Improvement.]

Appeal from the District Court of the United States for the Eastern District of New York.

Bill by the American Cone & Wafer Company against the Consolidated Wafer Company. From a decree dismissing the bill, complainant appeals. Affirmed.

The bill was to procure specific performance of a contract for the assignment of patent 1,122,013 issued to John P. Groset and assigned by him to the defendant. The gist of the action lay in the words of an earlier assignment from Groset to the plaintiff's predecessors in title of a patent, 1,010,619, issued to him before the patent now in suit. This assignment concluded with the following phrase after the description of the patent: "Together with all

---

rights and privileges thereunder, as well as all improvements that may be made thereto or thereunder." Several questions were litigated at the hearing besides that upon which the case turned below and turns here; i. e., whether Groset's second patent falls within the language just recited. They are not set forth here.

Both patents were for machines to mold and bake ice cream cones made from batter. No detailed description of the patents is intelligible without the accompanying drawings, especially as the second patent discloses an elaborate and complicated machine. A short description of each, full enough to make a discussion of the cause understandable, appears in the following excerpts from the opinion below: "The machine of Groset's first patent shows a horizontally rotating carrier provided with radially extending cup-shaped holders and vertically swinging pivoted arms carrying the conical formers co-operating with the cup-shaped holders. These cup-shaped holders are divided molds, and suitable mechanism is provided for opening the molds and for raising the conical formers. When the molds have received a charge of batter, the swinging arms carrying the formers drop down and form the batter into a hollow cone shape, after which the horizontal revolution of the table or carrier carries the closed molds and formers through a semicircular oven where the cone-shaped batter formations are subjected to heat for the purpose of cooking. * * * In the machine of the patent in suit, the divided molds and cone-shaped formers are carried by what might be termed a ferris wheel rotating, not in a horizontal, but in a vertical, plane, and instead of passing through a circular oven each set of molds and formers is provided with individual heating instrumentalities for the purpose of cooking the batter forming the cone."

James A. Watson, of Washington, D. C., and A. Parker Smith, of New York City, for appellant.

Charles Dushkind, of New York City (T. Hart Anderson, of New York City, of counsel), for appellee.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). We think it clear that the purpose of the language used was not to subject every future cone baker which Groset might devise to the assignment; the improvements covered by the phrase were those to that machine, not to the art in general. Every more efficient machine would be an improvement "upon" it, in common speech, but not "to" it. We attach significance to the word "thereto", and we should attach an added significance as well to "thereunder," if we could find any meaning for it. As it is, it seems to us rather a bit of scrivener's verbiage. It is, of course, true that any improved cone baker might supersede that purchased by the plaintiff's predecessors, and would therefore defeat the grant. Perhaps it would have been legal to bind Groset to assign any future machine against such a possibility; we need not pass upon that question. All we say is that, if the purpose is so broad, the language must not be so vague. Groset was free to make a new cone baker, which might successfully compete with the plaintiff, so long as it was not an improvement "to" the disclosure of his first patent.

It must be confessed that there is still great latitude open; we agree with the plaintiff that an "improvement" need not necessarily be a physical addition to the machine, leaving all its parts unchanged.

Now, it is true that it might be hard, once some reorganization is admitted as possible within the word "improvement," to draw a satisfactory definition dialectically between one improvement and another. But we are concerned with affairs, not logic, and we look to their circumstances to understand what the parties meant. The necessities of the art fixed many of the elements of a cone baker. It must be made to receive viscous batter in a thin layer between two conical surfaces, mold and cone former, of which one, and preferably both, must be kept hot. The batter might perhaps in theory be run between the faces of fixed members, but the cone is extremely thin, and we think it apparent from common sense that their separability when the batter was poured in was an essential part of any such machine. Thus we have as inevitable features separable conical members, movable to and from a batter reservoir, and connected with, or movable to and from, a heating apparatus.

There are, no doubt, points of resemblance between the two patents besides these; in each the mould separates to drop the baked cone and the movement of both members to and from the batter reservoir is circular, instead of being reciprocal as might perhaps have been. Beyond these we see no similar features, except those already mentioned, which seem to us inherent in any machine of the kind. The heating system is radically different; the means to lift the cone former and the mechanism to divide the mold; there is nothing else in the machine. That some of the features are the same is not we think enough; it must appear that the old machine remains enough the same to preserve its identity. Under just what changes that identity would be lost, we cannot say and we need not. Any decision must appear arbitrary, where the test is the vague language of business, and not the precise terminology of logic. We must try rather to assume the posture of the parties at the time, and consider what most men would have thought such language covered. Their test would in some measure have certainly depended upon the extent of the change; they would have recognized that to recast the details of the whole machine might make it a different one, though some features remained in common. Perhaps we can do no more than to say that the extent of these changes in our judgment passes beyond the standard of identity which we think they would have accepted.

If the test may be whether the new machine will read on the claims of the old, it does not trouble us. Two features of the claims are not realized; i. e., that the mechanism to open the mold shall be at one side of the cone formers, and that the cone formers shall be pivoted. We agree with Judge Veeder that the patent in suit presents too great a departure from the earlier disclosure to fall within the contract.

Decree affirmed, with costs.