ATLAS PRESS CO. *v.* EAMES.

SPECIFIC PERFORMANCE — PATENTS — CONVEYANCE OF FUTURE IMPROVEMENTS.

> On a bill for the specific performance of a contract whereby a patent on an arbor or mandrel press was conveyed with "the full and exclusive right to said invention and to all improvements, present and future, which may be developed thereon," an improvement consisting in putting added force behind the ram by means of a chain of gears, *held*, to be an improvement within the meaning of the contract, and not such a mechanical departure as to make it a new or independent invention.

Appeal from Kalamazoo; Chester, J., presiding. Submitted April 10, 1919. (Docket No. 27.) Decided July 17, 1919.

Bill by the Atlas Press Company against Gardner T. Eames and others to enjoin unfair trade competition, and for the specific performance of a contract. From a decree for plaintiff in part, it appeals. Modified, and affirmed.

*Harry C. Howard,* for plaintiff.

*Alfred J. Mills,* for defendants.

BIRD, C. J.   Gardner T. Eames, of Kalamazoo, the defendant herein, is an inventor. In 1911 he brought to the patentable stage an arbor or mandrel press, a device used in the mechanical world to remove wheels or pulleys from line shafts and for similar operations. Like most inventors, he was without means to secure and promote his invention. He applied to, and received the aid of, Herbert H. Everard, of his city, in consideration of a one-half interest in the invention.

The patent was secured and a company organized to manufacture and place the press upon the market. The name given to the corporation was the "G. T. Eames Company." To this company both Eames and Everard joined in an assignment of the patent. They conveyed "the full and exclusive right to said invention and to all improvements, present and future, which may be developed thereon." The company began manufacturing, advertising and selling the presses to the trade, under the name of "Eames Presses." It gave evidence of being a success. In 1913, Mr. Everard, who had given the defendant and the company such generous financial and business assistance, died, and his interest passed to his daughter, Mrs. John H. Penniman. Mr. Penniman, her husband, succeeded Mr. Everard in the business management. Differences soon arose between Mr. Penniman and Mr. Eames and this resulted in taking the keen edge off from the business. Debts accrued with no funds to pay them. Legal proceedings were threatened by creditors. Finally matters became so acute that Eames sold and transferred his interest in the G. T. Eames Company to Penniman for $5,000. Penniman then moved the plant to another location in the city of Kalamazoo, and changed the name of the corporation to the "Atlas Press Company." Following this Eames opened a machine shop in the old quarters where he manufactured other devices which he owned. In a few months he received a patent on another arbor press. He then organized a new corporation, taking the abandoned name of the old company. Located in the old quarters, at 410 Oakland drive, with the old corporate name, he began to manufacture, advertise and sell his new press under the old name of "Eames Presses." In a short time this resulted in friction between the companies, and much confusion and mixing of their mail. To settle the controversy plaintiff company filed this

bill praying for an injunction against unfair trade competition by defendant, and further to compel him to transfer his new or improved patent to plaintiff under his original assignment. The hearing resulted in a decree granting plaintiff relief from the unfair trade competition but refusing to compel defendant to transfer the patent. Plaintiff appeals from that portion of the decree refusing specific performance.

The contentions of the parties present the question for solution, whether the new press of defendant is, within the meaning of the contract, an improvement on the old one, or whether it is such a mechanical departure from the old machine as to make it a new or independent invention.

In the new patent defendant has described the objects as follows:

(1) To provide a mandrel press having an improved ram driving mechanism.

(2) To provide an improved mandrel press which is comparatively economical in structure, is very powerful, and one in which the parts are so disposed that the strain thereon is very effectively distributed and well balanced.

In his testimony defendant describes the difference between the two as follows:

"I made this more powerful, the ram is driven by a more powerful arrangement of the parts, and that consists of these exposed gears. I added to the art this chain of gears over the other patents. I presume the earlier art had frames like the frame in my invention, or similar ones. Instead of using one lever and a broken pin as a bearing for the two movements, I put on a second lever. I think that was old in the art. The chain of gears as here applied is the new thing I put in. I put another set of teeth in the ram part. When it operated as in the old invention with one set of teeth, it gave power enough to the ram, but put too much friction on it: too much friction of the ram

against the face or plate so instead of that I put a chain of gears in there on this frame. I think that was an improvement over this."

The witness Collins testified that:

"The mechanical purpose of the chain of gears in this patent is to obtain power. In our old patent we obtain power by compounding the leverage. He compounds the leverage the same way we do and he has the added feature of the gear."

Mr. Otis Earl, defendant's patent attorney, testified:

"It was a combination patent and so was the other. In the other they combined the whole mechanism, the ram and all those things. The art was old when the inventor applied for his first patent, and was still old when he applied for the second; deals largely with specific details of each inventor; there is nothing broadly involved in either one of them. This one (meaning the latter) is an improvement, in the sense it appears to have some added points over the earlier one; some improvements over the other."

He further testified that:

"Mandrel or arbor machines have been in use probably thirty or forty years. There are several types of mandrel presses. They have long standing in the literature of the profession and the literature of the art. A mandrel is not a new invention and the several mandrels that have been made subsequently are all a culmination of new ideas that are used in connection with the old machine, some new power or table, or something of that sort."

Mr. Taylor, another witness of defendant, testified that:

"The increased power in the last invention is attributable entirely to this chain of gears. * * * The practical difference between the two resides in this chain of gears; that is where they get the compound. There is no compound in the other, and, of course, they have cogs on the ram. * * * My opinion would be

this is an improvement over that; you would get more power exerted on the end of your ram."

We think it is to be gathered from this testimony that the cardinal difference between the old and new press is that defendant has added a chain of gears to the old machine and thereby produced the new one. In doing this the efficiency of the new press was greatly increased over the old one. This, to my mind, is an improvement and is such an improvement as was contemplated by the parties when the assignment was made to include "all improvements past, present and future which may be developed thereon." While the construction of the two machines is somewhat dissimilar it would probably be very difficult to make an improvement on an existing machine and one which would materially increase its efficiency unless it was more or less dissimilar in construction. But, notwithstanding this dissimilarity of construction the essential features, namely, the ram and the object to be accomplished, are the same. The sole improvement consists in putting added force behind the ram by means of a chain of gears. This would appear to increase the power of the old machine instead of creating a new one. If this change can take the new machine out of the domain of an improvement and make an independent invention of it, it will do, in my judgment, what was not contemplated by the parties at the time the agreement was made, and it will also open the way for inventors in the future to dispose of the rights of their assignees to whom, for a valuable consideration, the patent, or some interest in it, has been transferred.

To hold that the new press is an improvement on the old one will, we think, be giving a construction to the agreement of the parties which they themselves intended at the time it should have. That defendant's understanding of the agreement was in accord with

this view when he was associated with the company, is evidenced by the fact that he assigned to the company a subsequent patent, which was issued to him, on the table of the press, which he declares in his testimony was more of a departure from the old table than the present improvement is from the old press, and he further stated that he made the assignment because he thought it was within his agreement.

The case of *Westinghouse Air-Brake Co.* v. *Chicago Brake & Manfg. Co.,* 85 Fed. 786, contains an interesting discussion on this subject. The question there was whether certain changes made in the air brake which increased its efficiency was an improvement or a separate invention. It was there said in part:

"But, were they much more dissimilar, such fact would not change my conclusion. Identity of purpose and function of the two mechanisms controls the question whether the one stands in the relation of an improvement to the other. Dissimilarity of the mechanical means employed to reach the purpose, or perform such function, only measures the merit and character of the improvement. Park may, in his later invention, in the narrow sense of particular arrangement and adjustment of valves, have started out on new lines; but, in the broader idea that dominates these air-brake devices, he remained, in 1895, precisely where he was in 1888. In the later patents he only perfects, in mechanical details, the fundamental conception upon which his former invention was built. The two groups of inventions, in my judgment, stand indisputably, in the relation of consecutive mechanical growth—in the relation of an imperfect machine, somewhat perfected. In every view of the meaning to be given to the word 'improvements' as used in the assignment, I can find nothing that fairly excludes these later inventions."

See, also, on this subject: 1 Robinson on Patents, § 215; Walker on Patents (5th Ed.), § 285; *Aspinwall Manfg. Co.* v. *Gill,* 32 Fed. 697.

Entertaining the view that we do, the decree made by the trial court must be modified and specific performance decreed in accordance with the prayer of the bill.

The decree will be modified in this respect and affirmed, with costs of both courts to the plaintiff.

OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN JJ., concurred.