GOODMAN *v.* WOBIG.

1. COURTS—JURISDICTION — STATE COURTS — UNITED STATES PAT-
ENTS.

A contract for the assignment of a United States patent
may be specifically enforced in the State courts.

2. SPECIFIC PERFORMANCE—EQUITY—MUTUALITY.

On appeal from a decree for the specific performance
of a contract to assign a United States patent, where
plaintiff, by assigning his rights in said patent and
forming a corporation, put it beyond his power to per-
form his part of the contract, and if decree for him
should stand defendant would be deprived of his patent
and get practically nothing in return, the decree of the
court below will be reversed as against equity and good
conscience.

Appeal from Wayne; Root (Jesse H.), J., presiding.
Submitted June 14, 1921.   (Docket No. 37.)   De-
cided October 3, 1921.   Rehearing denied February 8,
1922.

Bill by Harry Goodman against Fred H. Wobig and
another for specific performance of a contract. From
a decree for plaintiff, defendant Wobig appeals. Re-
versed and bill dismissed.

*Benjamin & Betzold* (*Rockwell T. Gust* and *Steven-
son, Carpenter, Butzel & Backus,* of counsel), for
plaintiff.

*James H. Pound,* for defendant Wobig.

MOORE, J.   This bill of complaint was filed to com-
pel the specific performance of a contract. Plain-
tiff, Harry Goodman, is a mason contractor in De-
troit. Defendant, Fred H. Wobig, was a manufacturer

of motor valves.    Mr. Goodman met Mr. Wobig about
the first of September, 1919.    Mr. Wobig interested
Mr. Goodman in a proposition to purchase the ma-
chinery and equipment of the Meridian Machine
Products Company, makers of motor valves.    Nego-
tiations were had for the purchase of the Meridian
Machine Products Company, but nothing came of
them.    It is claimed that after the proposition to pur-
chase the property of the Meridian Machine Products
Company fell through, Mr. Wobig advised Mr. Good-
man that new equipment could be secured more ad-
vantageously than to purchase second-hand equipment
from the Meridian Machine Products Company, as
originally intended, and that this was done.    Mr.
Goodman secured a small building in which their oper-
ations were conducted.    It is claimed Mr. Goodman
purchased equipment, dies, steel and other material
with which Mr. Wobig experimented, developing a
new welding process.    During this period Mr. Good-
man paid Mr. Wobig a salary of $50 per week.    It
is claimed the investment of Mr. Goodman was, all
told, about $14,000.    About February 4, 1920, the
new process was so far perfected that a patent at-
torney was consulted and an application for a patent
was made a little later.    It was thought best to have
the agreement of the parties in relation to the busi-
ness, and the use of the new process, in writing, and
the office of a lawyer who had before this acted for
Mr. Goodman was visited.    The lawyer dictated an
agreement to his stenographer.    This was transcribed.
The parties remained an hour or more in the office
and Mr. Wobig made some objections to the form of
the agreement.    Mr. Wobig took away a copy of the
contract as it then was.    When the parties returned
the next day some changes had been made, and it is
the claim that copies were given to each of the
parties, and that the contract was read aloud to them,

after which both of them signed each sheet of the contract. This was on the 19th of February, 1920. Mr. Wobig took his copy of the contract home and his wife objected to the contract and both of them the next morning went to see Mr. Goodman and insisted upon the agreement being changed so as to conform to the understanding of the Wobigs. The parties are not agreed as to what occurred, but Mr. Wobig did not return to the plant to work, and this bill of complaint was filed on the 25th of February, 1920. A hearing was had and a decree for specific performance was made. The case is brought here by appeal.

It is the claim of the defendant that the written contract was different from what the parties understood it was to be, and that it was hastily read to him, and that he did not understand its meaning when he signed it.

Defendant's counsel contends that, because the subject-matter of the contract is a United States patent, the State court is without jurisdiction. This question has long been settled adversely to such a contention, both by the decisions of this court and the decisions of the Supreme Court of the United States. *Nichols, Shepard & Co.* v. *Marsh,* 61 Mich. 509; *Marsh* v. *Nichols, Shepard & Co.,* 140 U. S. 344 (11 Sup. Ct. 798).

It may be well to quote the contract. It reads:

"This agreement, made and entered into this 18th day of February, A. D. 1920, by and between Harry Goodman, of Detroit, Michigan, party of the first part, and Fred H. Wobig of the same place, party of the second part, witnesseth:

"Whereas, party of the first part has heretofore purchased the necessary machinery and equipment to equip a machine shop at No. 1731 Russell street, Detroit, Michigan, of which said business, at the date hereof, said first party is the sole and absolute owner.

Said business when ready, to be conducted, is to be under the name of the Meridian Motor Valve Company.

"And in the equipping and furnishing of said machine shop, the said first party has, to the date hereof, invested the sum of fourteen thousand dollars ($14,000.00). And whereas, the said first party equipped said factory and machine shop, and entered into said business at the special instance and request of said second party, made on or about the 19th day of September, 1919. The said second party being an experienced machinist and mechanic, and a specialist in the manufacture of motor valves.

"And whereas, the said second party has, between the 19th day of September, 1919, and the date hereof, while working and employed by the party of the first part, and receiving wages during said time from first party, perfected a process for welding or amalgamating iron and steel, to be used in the construction and manufacture of motor valves.

"And whereas, the said party of the second part, has heretofore made application for United States patent for said process through Stuart C. Barnes, patent attorney of Detroit, Michigan.

"And whereas the said party of the first part, is desirous of hiring and engaging the said second party as superintendent of his plant, to have general charge of the production department, and to acquire an interest in the business of said first party, to-wit, the Meridian Motor Valve Company, and the machinery equipment and assets thereto. Therefore, it is mutually agreed by and between the parties hereto, as follows:

"Said first party hereby hires said second party as superintendent for his plant at 1731 Russell street, to be known as the Meridian Motor Valve Company, to have general charge of the production department, at a weekly salary of sixty dollars, or as shall be hereafter mutually agreed upon.

"Said second party may acquire a one-half interest in said business, equipment and assets upon the following terms and conditions, to-wit: That if said second party shall faithfully perform this agreement, in all respects, and shall remain with first party un-

til the event hereinafter set forth shall transpire. Then first party agrees that when first party shall have received from the net profits of said business, the amount of money that he (first part) has invested therein, to-wit, the sum of fourteen thousand dollars, and other further sums, that he may hereafter be compelled to contribute in excess of the income from said business. Then, upon the happening of such event, viz., the receipt of said first party of the full amount so invested by him, as aforesaid, first party will then execute articles of copartnership between party of the first part, and party of the second part, in which said party of the second part shall be an equal partner with said first part, and have a one-half interest in the business, equipment and assets, of the Meridian Motor Valve Company, as it shall be at that time. And shall thereafter be entitled to one-half of the profits, and shall be liable for one-half of the losses. Said second party agrees to hire to, and remain with first party until such time as he shall become a partner as hereinbefore provided.

"It is hereby mutually understood and agreed, by and between the parties hereto, that all patent improvements of process designs of tools or machinery, or all new productions to be hereafter manufactured, shall be the property of said first party.

"It is further mutually understood and agreed, by and between the parties hereto, and as part of the consideration of this agreement, that said first party shall have the full and exclusive use of the process for welding or amalgamating iron and steel, as now discovered and invented by party of the second part, and for which said second party has heretofore made application for United States patent, including the use of and right to said patent when issued, during the life of said patent. But no longer than the time that said first party shall remain in the manufacture of motor valves.

"It is further mutually understood and agreed by and between the parties hereto, that until said first party receives back in full his entire investment in said business out of the net profits of said business, that said second party is not and will not be considered as a partner therein, and will not be liable for

any of the indebtedness of said concern or business.

"It is further understood mutually by and between the parties hereto, that if the said second party shall at any time in the future, upon paying to the said first party one-half of the amount that said first party has to that date actually invested in said business, less any profits that may have to that time been withdrawn by first party upon his investment, shall be entitled to become an equal partner in said business, including the plant, equipment and assets of said company, and that said partnership agreement, will be signed at such time.

"It is understood that all the benefits of this contract shall enure to the heirs, representatives and assigns of party of the first part.

"In witness whereof the parties have hereunto set their hands and seals the day and year first above written.

"HARRY GOODMAN, (L. S.)
"FRED H. WOBIG, (L. S.)"

It is the claim of the defendant that the contract was not drawn as the parties had agreed the arrangement should be, and that he had no intention at any time to part with his title to the patent, and that as soon as he understood the effect of the contract he notified the plaintiff that he would not abide by its terms. The contract was signed February 19, 1920. Notice was given to the plaintiff on the next day that defendant would not abide by its terms. The bill of complaint was filed on February 25, 1920.

In 10 R. C. L. p. 392, it is said:

"He Who Seeks Equity Must Do Equity.—Anyone going into a court of equity and asking its aid, whether that aid be such as could be obtained in a court of law, or whether it be of a character obtainable only in a court of equity, submits himself to the jurisdiction of the court, and in asking its aid subjects himself to the imposition of such terms as well-established equitable principles would require. This principle expressed in the form of the maxim, 'he who seeks equity must do equity,' is almost as old

as the tribunal to which it applies, and since courts of equity refuse to recognize and protect equitable rights unless such rights are based on conscience and good faith, it may be regarded as one of the cardinal rules of equity. It pervades the entire field of equity jurisprudence."

A great many authorities are cited supporting the text.

In 25 R. C. L. p. 214, it is said:

"A decree for the specific performance of a contract is not a matter of right, but rests in the sound discretion of the court. This discretion is not arbitrary or capricious but judicial, and is controlled by the established doctrines and settled principles of equity. The desired relief will be granted or withheld by the court upon a consideration of all the circumstances of each particular case, and no positive rule can be laid down by which the action of the court can be determined in all cases. If, however, all the necessary incidents and conditions are proven by satisfactory evidence, the relief should be decreed as a matter of right, and not as a mere favor. Broadly speaking, whenever a contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardships to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award damages for its breach. It has been said that there is a tendency on the part of American courts to lower or elevate the general standards as to the proof of contracts in accordance with the views of the chancellor concerning the justice of the plaintiff's cause. This latitude is implied in judicial statements that the granting of specific performance is an extraordinary power which is not to be exercised when in a given case it would be contrary to equity and justice to exercise it, and that it is discretionary with the court to grant or withhold specific performance in furtherance of justice or to prevent injustice."

Many cases are cited in the footnote.

In the instant case there is no offer in the bill of complaint to hire the defendant as superintendent of the plant of the plaintiff at a minimum weekly wage of $60. There is no suggestion that defendant shall have a royalty on the valves produced, or that he shall share in any way in the profits. Nowhere is it averred that plaintiff will perform his part of the contract. The record shows that as early as April 9, 1920, Mr. Goodman had assigned all his rights in the application for the patent, and the patent itself, to the Meridian Motor Valve Company. It also shows there were three stockholders in that company, the plaintiff, Fred G. White, and Lawrence W. Scutter, each of whom at the time of the trial owned 1,000 shares of stock. This situation would indicate that plaintiff had put it beyond his power to perform the agreement he made in the contract if he desired to do so.

The following provisions are contained in the decree:

"(b) That since beginning this suit, said application for patent by said Fred H. Wobig has been completed and filed in the patent office at Washington, D. C. That said application for patent was executed by said Fred H. Wobig on February 25th, 1920; filed in the patent office at Washington, D. C. on March 6th, 1920, and that the official number of said application is 363781.

"(c) That said Harry Goodman is entitled to an assignment of all the rights of said Fred H. Wobig, in and to said application for patent and the patent therefor when issued, and to the sole and exclusive use, right and benefits thereof.

"(d) That said Harry Goodman has heretofore, to-wit, on April 9th, 1920, duly assigned all his rights in, and to said application for patent, and patent, when issued to the Meridian Motor Valve Company, a corporation duly organized under the laws of the State of Delaware, and that the said Meridian Motor Valve Company is now, the legal owner of all the rights of said Fred H. Wobig in and to said application for

patent, and the patent therefor when issued, and to the sole and exclusive use, right and benefits thereof.

\* \* \*

"(*f*) That the said Fred H. Wobig is and will be entitled to a re-assignment of said application for patent, and the patent thereon when issued, if any is issued, at such time as the said Meridian Motor Valve Company, its successors or assigns, shall cease to remain in the manufacture of motor valves.

"(*g*) That said Fred H. Wobig, on the 20th day of February, 1920, voluntarily breached the contract with said Harry Goodman, under date of February 18th, 1920, hereinbefore referred to, and that with the exception of the reservation of right, which said Fred H. Wobig has, in said patent referred to in paragraph F. The said contract is at an end, and that the said Fred H. Wobig, has no further rights therein."

The parties to this litigation evidently regard the patent as a valuable one. Counsel for defendant characterizes it in his brief:

"If this patent is a meritorious one, and if the results hoped for can be obtained as hoped and expected, then a fortune of fabulous proportions is the sure fruit of this union of different kinds of metal that will grow with the years. Not only for the benefit of defendant, but of posterity as well. It is almost too good to be true. But I am told that it can be done, by men in whose knowledge of the use and transmutation of metals and workers of ability of metals, I have confidence. And if it can be firmly and completely made at all, then it is bound to be a complete success ultimately. And I am informed that it has been done. It will make as much change in that portion of auto industry as the change from cogwheels to a smooth iron rail, and from windlass and rope action to traction and trolley."

Whether this is a proper characterization of the value of the patent or not, the patent office evidently thought there was some merit in the process or the patent would not have been issued. If the decree is

permitted to stand, the defendant is deprived of his patent without any provision being made that he shall be superintendent of the plant; without any provision that he shall share in the profits of the manufacture. In fact he gets nothing in return for his patent. The result is so clearly against equity and good conscience that the decree should not stand.

The decree is reversed, with costs to the defendant, and plaintiff is relegated to any remedy he may have at law.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.