NATIONAL STEEL FURNACE CO. v. WATSON.

1. PATENTS—WARM AIR FURNACES—CIRCULAR RADIATORS—COMBUSTION CHAMBERS—STRUCTURES—REFERENCES—LICENSES.

Second patent covering an improved method of constructing a combustion chamber for a warm air furnace in two sections and in such a way that the upper portion could be revolved horizontally so as to permit gunning of smoke vent in any direction needed to enter a chimney and use of fasteners to join the upper to the lower part of the combustion chambers without use of gaskets or cement *held,* not merely an improvement upon structure of first patent covering a method of attaching or connecting a circular radiator extending around a warm air furnace to the combustion chamber of the furnace but an entirely separate and distinct structural matter from that of first, notwithstanding general reference in application for second patent to first patent, hence an exclusive license of first which included all improvements on the structure thereof would not bar patentee from licensing second patent to another party.

2. FRAUD—PATENTS—ROYALTIES—EXCLUSIVE LICENSE ON PRIOR PATENT.

   In action by licensee of second patent against patentee of a first and second patent for fraud because defendant had hitherto granted an exclusive license to a prior licensee on first patent and improvements thereon, fact that defendant had received royalties from such prior licensee during period involved herein and it had placed number of second patent on its furnaces *held,* not to show fraud alleged where such payments as were made were made irrespective of any rights such prior licensee had in second patent and it is shown such licensee had no rights therein.

   Appeal from Washtenaw; Sample (George W.), J. Submitted April 4, 1939. (Docket No. 1, Calendar No. 40,092.) Decided July 6, 1939.

   Case by National Steel Furnace Company, a Michigan corporation, against Ernest L. Watson for damages for alleged fraud and deceit in the licensing of the rights in use of certain patents. Judgment for defendant. Plaintiff appeals. Affirmed.

   *William J. Lehmann* and *Fred A. Lehmann* (*Henry B. Graves,* of counsel), for plaintiff.

   *Burke & Burke* (*Allen R. Whittington* and *Joseph Zwerdling,* of counsel), for defendant.

   NORTH, J. In this action at law plaintiff seeks to recover damages from defendant for alleged fraud and deceit. Only the second count of the declaration in trespass on the case is involved, plaintiff having abandoned the first count in assumpsit in the circuit court. The case was heard without a jury, judgment was entered for defendant, and plaintiff has appealed.

   In brief, plaintiff's action is based upon alleged misrepresentations by defendant Watson to the Star

Cutter Company and its president, Mr. Howard B. Lawton. In the fall of 1933 defendant and Mr. Lawton had numerous interviews or conferences concerning the latter or the Star Cutter Company undertaking to manufacture and market warm air furnaces under a patent for which Watson then had an application pending, this application having been made July 11, 1932. Ultimately an oral agreement was made between Mr. Lawton and defendant in which defendant agreed that for a certain consideration he would grant to the Star Cutter Company and Mr. Lawton, or to a corporation that might be formed, the exclusive right in Michigan and adjoining States to manufacture and sell furnaces constructed under defendant's patent. It is plaintiff's claim that the Star Cutter Company and Lawton, relying upon defendant's agreement, expended large sums of money incident to organizing the Michigan corporation which is plaintiff herein, in purchasing machinery with which to carry on the manufacturing enterprise and in manufacturing two sample or experimental furnaces, and starting the manufacture of 60 furnaces, 40 or 45 of which were later completed. It developed that the United States Pressed Steel Products Company, a Michigan corporation engaged in business in the city of Kalamazoo, claimed plaintiff herein in manufacturing the furnaces under its agreement with defendant was infringing rights possessed by the United States Pressed Steel Products Company to manufacture warm air furnaces under an exclusive license covering the United States and Canada granted to it by defendant Watson. After some investigation concerning this claim of an exclusive right by the United States Pressed Steel Products Company and after it had threatened plaintiff with litigation, plaintiff discontinued its manufacture of warm air furnaces.

The representations which plaintiff claims were false and were made by defendant to Mr. Lawton were that defendant had the right to grant plaintiff an exclusive license to manufacture and sell warm air furnaces under letters patent for which he had an application then pending. This patent when ultimately granted on April 24, 1934, bore the number 1955990. Before this suit was brought Mr. Lawton and Star Cutter Company assigned whatever rights of recovery they might have against defendant to the plaintiff herein. In plaintiff's brief its cause of action is thus stated:

"This is an action based upon the misrepresentations of defendant regarding his right to give a license to plaintiff to manufacture and sell these furnaces, because he had already given the right to the United States Pressed Steel Products Company. The present action is not for breach of contract, but is based on the tort involved in inducing plaintiff to go into the manufacture and sale of the furnaces."

Defendant does not deny having entered into an agreement with Mr. Lawton in substantially the terms asserted, except he denies it was for an exclusive license; but he asserts that none of his rights under the above-numbered patent had been assigned by him to the United States Pressed Steel Products Company.

The record discloses that on August 22, 1931, defendant entered into an exclusive license agreement with the United States Pressed Steel Products Company to manufacture and sell furnaces under an application for a patent he then had pending. On February 9, 1932, a patent was issued to defendant under this application, bearing number 1844453. Hereinafter we will refer to this patent, because it was the earlier one of the two, as the first patent;

and to the patent mentioned earlier herein as the second patent. Defendant's agreement with the United States Pressed Steel Products Company not only covered the patent rights for which his first patent was issued but his agreement, which included other applications then pending, also contained the following provision:

"And this license shall include and be applicable to any and all improvements which said Watson has invented or devised or may hereafter invent or devise, on the structure of the said applications."

A controlling issue in the instant case arises from plaintiff's claim that, by reason of the above-quoted provision in Watson's contract with the United States Pressed Steel Products Company, this latter company has the exclusive license to manufacture warm air furnaces of the type plaintiff had planned to manufacture because defendant's second patent, notwithstanding the application was made after the contract with the United States Pressed Steel Products Company, was a patent for improvements on the structure for which his first patent was issued. On the other hand defendant denies this contention and asserts that the second patent was in no way related to the first but instead was an entirely separate and independent patent covering improvements on a warm air furnace entirely separate and distinct from the improvements covered by his first patent. The issue settles down to this: Is the second patent an improvement upon the structure of the first patent within the meaning of the exclusive license granted by defendant to the United States Pressed Steel Products Company? If it is not, plaintiff is without right of recovery in this case.

Our investigation of this record satisfies us that defendant's second patent was not merely an im-

provement upon the structure of the first patent, but instead it covered an entirely separate and distinct structural matter. The first patent merely covered a method of attaching or connecting a circular radiator extending around a warm air furnace to the combustion chamber of the furnace; while the second patent had nothing to do with such a structure; but instead it covered an improved method of constructing a combustion chamber for a warm air furnace in two sections, and in such a way that the upper portion could be revolved horizontally in the groove of a ring which formed the upper edge of the lower portion and in that way the smoke vent of the furnace could be gunned in any direction needed to enter a chimney, and further the upper portion of the combustion chamber had attached to it fasteners which by being brought in contact with the lower portion of the ring and being thereafter tightened would securely join the upper portion of the combustion chamber to the lower portion.

The difference between these two patents clearly appears from the respective applications made by defendant. We quote briefly from his application for the first patent as follows:

"This invention relates generally to furnace structures and refers more particularly to the construction of and connections between the combustion chamber and radiator of a hot air furnace. * * *

"Another object is to provide a furnace in which the connections between the combustion chamber and radiator are of special design and comprise parts having metal-to-metal contact, whereby gaskets and all furnace cement have been dispensed with entirely. * * *

"What I claim as my invention is:

"1. A furnace having a combustion chamber provided at diametrically opposite points with laterally projecting tubular portions, a radiator upon the

outer side of said chamber having tubular portions in alignment with the tubular portions aforesaid, and connections between said radiator and chamber including nipples engaging the aligned portions aforesaid of the radiator and combustion chamber, one of said nipples having relatively adjustable parts adapted when adjusted to cause the other nipple to be held in tight engagement with certain of said aligned tubular portions.''

As bearing upon the character of the structure covered by defendant's second patent, we quote the following from his application:

''This invention relates generally to warm air furnaces of the type illustrated in my Patent No. 1844453 (the first patent), and refers more particularly to the combustion chambers thereof.

''One of the essential objects of the invention is to provide a furnace wherein the combustion chamber has two sections of steel separately formed and arranged in superposed relation whereby the upper section supporting and encircled by a radiator may be adjusted relative to the lower section to permit one of the outlets of the radiator to be positioned in line with the chimney. * * *

''A further object is to provide a detachable or adjustable connection between the sections which will permit further adjustment of the upper section and enable the sections to be taken apart for repairs, replacement, et cetera.

''A further object is to provide a combustion chamber wherein a ring, preferably of the same material as the sections, is secured preferably by welding to the lower section at the upper edge thereof and has a groove or recess therein that receives and forms a seat for the lower edge of the upper section. * * *

''A further object is to provide a structure wherein means secured to and suspended from the upper section is engageable with the ring aforesaid fixed to

the lower section to cause the upper section to be drawn down and securely held in place upon the lower section.''

In covering this phase of the case the circuit judge in his opinion stated:

''The court further finds that Patent No. 1955990 (the second patent) is not an improvement upon Patent No. 1844453 (the first patent) within the meaning of the license granted by Watson to the United States Pressed Steel Company, exhibit 1. The testimony given by Mr. Watson, as well as that given by Mr. Whittington, who is a patent attorney of many years' experience, demonstrated to the court that these patents cover independent inventions which are separately classified in the United States Patent Office and are for entirely different purposes. The respective structures function differently and produce different results. Patent 1844453 (the first patent) covers a circular radiating drum and nipples at diametrically opposite points thereof, while the Patent 1955990 (the second patent) covers a combustion chamber divided horizontally between the fire box and dome section with means for fastening the dome section to a ring on the upper edge of the fire box. In *Westinghouse Air Brake Co.* v. *Chicago Brake & Manfg. Co.*, 85 Fed. 786, 790, and as quoted by our Supreme Court in *Atlas Press Co.* v. *Eames*, 206 Mich. 588, 593, the rule is stated to be:

'' 'Identity of purpose and function of the two mechanisms controls the question of whether the one stands in the relation of an improvement to the other.'

''From the undisputed testimony, it appears that the one device could be put into the furnace without the other, and the adding of the other would not increase the efficiency or aid in the functioning of the one.''

The circuit judge's determination is fully sustained by the record in this case; and because we are

in accord with that determination it is hardly necessary to discuss in detail all the other questions considered in the briefs. However, we have not overlooked the various phases of the record which appellant urges in support of its contention that defendant's second patent was merely an improvement on his first patent and therefore the right to manufacture under it was the property of the United States Pressed Steel Products Company; and we here note them in part.

Hereinbefore we have quoted from defendant's application for the second patent his statement: "This invention relates generally to warm air furnaces of the type illustrated in my Patent No. 1844453," i. e., the first patent. Plaintiff urges that this recital brings the second patent within the license granted under the first. But the contrary is definitely determined by the claims covered by the respective patents to which sufficient reference has already been made. The reference to the warm air furnace outlined in the drawings of the earlier patent was obviously a convenient and brief method of description which disclosed the form or type of prior art (warm air furnaces) to which plaintiff's second patent applied. This second patent covered a structural improvement on warm air furnaces, but entirely distinct and separate from the improvements specified in defendant's first patent. The construction plaintiff would put on the above-quoted statement is wholly inconsistent with the true facts disclosed by the respective patents.

Plaintiff calls attention to the fact that during the period of this controversy defendant received royalty payments from the United States Pressed Steel Products Company. True, but these were payments which accrued by reason of the license granted to that manufacturer under defendant's first patent,

and without regard to whether the manufacturer had any rights in the second patent.

Also it is noted by plaintiff that after the second patent was issued the United States Pressed Steel Products Company placed on its furnaces the number of this patent as well as the number of the first patent; but it is not established that in so doing the manufacturer acted within its legal rights. Obviously if, as this record discloses, the United States Pressed Steel Products Company had no rights in defendant's second patent, the fraud alleged by plaintiff was not committed.

The judgment entered in the circuit court is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.