## GONSER v. LELAND DETROIT MANFG. CO.

1. COURTS—JURISDICTION—SPECIFIC PERFORMANCE—ASSIGNMENTS—PATENTS.

Suit for specific performance of written contract relative to assignment of improvements or modifications of an invention and depending on common-law and equity principles is within jurisdiction of State court notwithstanding determination involves granting or denying prayer for transfer of patents or patentable rights.

2. PATENTS—CONTRACTS—MANUFACTURER'S IMPROVEMENTS—COMPETITION—NEW INVENTIONS.

Defendant's agreement to manufacture and sell plaintiff's patented meat tenderizer and assign plaintiff any improvements or modifications thereof made at any time thereafter covered only the improvements of plaintiff's invention but did not contemplate any machine that defendant might produce to compete with limited market built through use of plaintiff's patent, did not preclude defendant from entering the somewhat competitive field of manufacture of meat-tenderizing machines, nor bar defendant from making use of methods in the public domain of the prior art, nor give the plaintiff the right to a new invention which is different from and in no way infringes on his invention.

3. SAME—IMPROVEMENTS—ASSIGNMENTS.

Identity of purpose and function of two mechanisms controls the question of whether one stands in the relation of an improvement to the other in suit involving specific performance of contract to assign improvements upon patented device.

4. SAME—DETERMINATION OF SCOPE—CLAIMS.

Since the scope of every patent is confined to the invention described by its claims it is by those claims that a court determines where the progress claimed by the patent begins and where it ends.

5. SAME—PRIOR ART—PROGRESS.

The state of the prior art must be examined in construing any claim to determine what progress has been made.

6. SAME—IMPROVEMENT—CONSTRUCTION.
   A patent on an improvement on a known machine, as a secondary patent, is given a narrower construction than would be given a primary patent on an original invention.

7. SAME—DEFINITION.
   It is only when the new use is so recondite and remote from that to which the old device has been applied or for which it was conceived that its application to the new use would not occur to the mind of the ordinary mechanic, skilled in the art, seeking to devise means to perform the desired function, with the old machine or combination present before him, that its conception rises to the dignity of invention.

8. SAME—DISINTEGRATING MACHINES—ADAPTATION TO TENDERIZING MEAT.
   The slight adjustment of rollers required to adapt disintegrating machines to the partial disintegration process for tenderizing meat held, one which would occur to the mind of the ordinary mechanic of skill in the art.

9. SAME — MANUFACTURE — MEAT TENDERIZER — ASSIGNMENTS — IMPROVEMENTS.
   Under manufacturer's agreement to make and sell patented meat tenderizer and to assign improvements and modifications to patentee, the manufacturer was at liberty to avail itself of the idea so long as the novelty of plaintiff's patent does not appear in the result.

10. SAME—CLAIM OF NOVELTY—MEAT TENDERIZERS—ASSIGNMENTS—IMPROVEMENTS.
    Where patentee's claim of novelty in his meat tenderizer is in the "pairs of crushing gears with interposed cutter members and spacers, and the said cutter members carried by either shaft being constructed and arranged to extend between the pairs of gears on the other shaft and to the said spacers" is absent in device developed by manufacturer which effects a scissor-like action on the meat instead of a crushing and cutting operation, device of manufacturer held, not an improvement of patentee's invention so as to be within manufacturer's agreement to manufacture and sell patented meat tenderizer and assign any improvements or modifications to patentee.

Appeal from Wayne; Campbell (Allan), J. Submitted January 10, 1940. (Docket No. 15, Calendar No. 40,784.) Decided April 19, 1940.

Amended bill by John C. Gonser against Leland Detroit Manufacturing Company, a Michigan corporation, for specific performance of a contract for the manufacture of a meat tenderizer and assignment of improvements on a patented device, an accounting and other relief. From decree rendered, defendant appeals. Reversed and remanded.

*Johnston, Fast, Gazley & Huhn,* for plaintiff.

*Frank C. Sibley,* for defendant.

BUTZEL, J. Plaintiff invented a "Meat Tenderizer and Cutter" and was granted patent No. 2,025,505 on December 24, 1935. The invention differed in some limited but important details from the devices known in the prior art. Defendant is a manufacturer of automotive parts and other specialties. Plaintiff and defendant entered into a contract whereby defendant agreed to manufacture and sell the machine invented by plaintiff, and to make a proper accounting and pay the agreed royalties. It was provided that the rights of the parties should terminate in 30 days after notice to that effect. Such notice had been given. The clause occasioning the present litigation provides:

"It is mutually agreed that should second party make any improvements or modifications of said invention, that said first party shall have the right to the use thereof during the life of this contract, and that should said first party, at any time, hereafter, make any improvements or modifications of said invention, that such improvements and modifications shall become the property of the said second party and first party does hereby assign and transfer to second party all such modifications and improvements, and said first party shall manufacture all tenderizers in accordance with such specifications and designs as shall be approved by second party."

Plaintiff contends that defendant has made an improvement or modification of the invention which in equity belongs to him; defendant contends that its new device is entirely different from the patented features of plaintiff's machine, that its new tenderizer is based on different principles or the prior art which is now public domain. Defendant also refers us to unexpired patents belonging to third parties. We are reviewing the decree of the trial court granting specific performance of the contract.

We are confronted at the outset with a challenge to our jurisdiction of the subject matter. Defendant says that because a United States patent is the subject of the contract here sought to be enforced, the exclusive jurisdiction of the controversy is in the courts of the Nation. The answer is that the suit arises out of a contract and depends on common-law and equity principles. Our power to adjudicate does not vanish because in deciding we have to grant or deny a prayer for the transfer of patents or patentable rights. *Becher* v. *Contoure Laboratories, Inc.,* 279 U. S. 388 (49 Sup. Ct. 356); *Nichols, Shepard & Co.* v. *Marsh,* 61 Mich. 509, affirmed *sub. nom. Marsh* v. *Nichols, Shepard & Co.,* 140 U. S. 344 (11 Sup. Ct. 798); *Paul* v. *Collins,* 191 Mich. 113; *Goodman* v. *Wobig,* 216 Mich. 51; *Nahikian* v. *Mattingly,* 265 Mich. 128.

To laymen, the device would immediately suggest a narrow old-fashioned wash wringer with rolls about six inches long placed far enough apart to permit a piece of meat to be run between them. The steel rolls resemble large, symmetrical ears of corn with rows of kernels of uniform size, in the middle of which are inserted small projecting steel knives that are perpendicular to the roller shaft. The kernels or teeth are arranged in the same plane with those of the opposing roll and mesh when the rolls are turned, each kernel or tooth projecting into the

interdental space on the opposite roll. The entire mechanism is inclosed in a steel box, for which no claim is made here. The box has a wide slot opening at the top through which a piece of meat may be inserted. The meat is tenderized as it passes between the rolls by the cutting action of the knives and the crushing process of the teeth.

We think the main claim of novelty in plaintiff's patent is described in the first claim:

"In a meat tenderizer, a supporting casing, a shaft supported rotatively therein, pairs of crushing gears carried by the shaft, cutter members arranged between the gears of each pair of gears, spacers arranged between the said pairs of gears to space the pairs apart, a stationary shaft having oppositely threaded ends, bearings for said threaded ends, the said bearings being provided with springs arranged to act against the interior of the casing whereby said bearings are normally pressed away from said revoluble shaft, the said bearings and the casing having engaging inclined portions whereby when said stationary shaft is turned said bearings move the stationary shaft parallel with respect to said revoluble shaft, and a revoluble mandrel on said stationary shaft, the said mandrel being provided with pairs of crushing gears with interposed cutter members and spacers, and the said cutter members carried by either shaft being constructed and arranged to extend between the pairs of gears on the other shaft and to the said spacers."

It appears that defendant was not successful in selling this device, it having sold only 550 or 600 up to the time it received notice of the termination of the contract. The failure is ascribed to the breaking off of the small knives, of which there were over 350 on the two rolls. Frequently the broken steel would get into the meat, and defendant claims it was threatened with suits for personal injuries by per-

sons who claimed to have been injured by eating processed steak in which bits of the knife blades were embedded. Defendant further claims that it was constantly called upon to replace the broken knives, and many customers complained that the device was difficult to clean and maintain in a sanitary condition.

After plaintiff had given notice of termination of the contract, but before the expiration of the 30-day period, defendant was manufacturing and preparing to market a new machine, on which it has applied for letters patent. The new machine is housed in the same box, but the rolls do not have any cutter knives or blades. It does not have gears which crush the meat. The rolls have a series of star-shaped discs which have concave-edged teeth as distinguished from the convex teeth of plaintiff's machine. Each disc of the two rolls is not arranged in the same plane with the corresponding disc of the opposite roll so as to mesh, as they do in plaintiff's machine, but each meets its correspondent side-by-side in the plane adjacent; a tooth on one roll projects beside the interdental space of the opposite roll, so that there is a scissor-like action on the meat instead of a crushing and cutting operation.

It is contended by defendant that its new tenderizer had been made after the contract had been terminated and that, therefore, the contract gave plaintiff no rights therein. The trial court found that "this improvement was contemplated and largely developed before the termination of the contract." This finding is amply supported by the evidence, and we are not inclined to disturb it.

The main question concerns the construction to be given the contractual expression "improvements and modifications of said invention." Did the contract grant to plaintiff every device that defendant might

conceive in the art in general, or is this language to be given a more limited scope? Defendant claims that its new machine is for the most part copied from the prior art, with possibly some new feature on which it is seeking letters patent, and that the contract does not deprive it of the right which it would otherwise have with the rest of the world to partake of the public domain; plaintiff contends, as the trial court found, that "defendant undertook to develop a market for a rather special device, and had built up somewhat of a trade through the use of the Gonser patent, and the fruits of such business development was contemplated by the parties to be a valuable right which Gonser had a right to reserve and which the defendant agreed to regard as his own property." We think this conclusion is erroneous. The tenderizing of meat by rollers was not a new art. There were other devices on the market. There was no agreement by defendant not to go into the same line of business before the termination of the contract or not to use old processes open to the public or new ones constituting new inventions; it agreed to regard as plaintiff's property only improvements "of said invention." The trial court's holdings are not in accord with the language of the contract and the decided cases interpreting similar contracts.

*American Cone & Wafer Co.* v. *Consolidated Wafer Co.,* 159 C. C. A. 429 (247 Fed. 335), was a bill for specific performance of a contract to assign a patent "together with all rights and privileges thereunder, as well as all improvements that may be made thereto or thereunder." Judge Learned Hand wrote:

"We think it clear that the purpose of the language used was not to subject every future cone baker which Groset might devise to the assignment; the improvements covered by the phrase were those

to that machine, not to the art in general. Every more efficient machine would be an improvement 'upon' it, in common speech, but not 'to' it. We attach significance to the word 'thereto,' and we should attach an added significance as well to 'thereunder,' if we could find any meaning for it. As it is, it seems to us rather a bit of scrivener's verbiage. It is, of course, true that any improved cone baker might supersede that purchased by the plaintiff's predecessors, and would therefore defeat the grant. Perhaps it would have been legal to bind Groset to assign any future machine against such a possibility; we need not pass upon that question. All we say is that, if the purpose is so broad, the language must not be so vague. Groset was free to make a new cone baker, which might successfully compete with the plaintiff, so long as it was not an improvement 'to' the disclosure of his first patent.''

Other decisions are clear in holding that such an assignment includes only improvements to the machine secured by the patent assigned. *McAuley* v. *Chaplin-Fulton Manfg. Co.*, 217 Pa. 477 (66 Atl. 750); *Stitzer* v. *Withers*, 122 Ky. 181 (91 S. W. 277); *Allison Bros. Co.* v. *Allison*, 144 N. Y. 21 (38 N. E. 956); *Aspinwall Manfg. Co.* v. *Gill*, 32 Fed. 697; *West Disinfecting Co.* v. *United States Paper Mills, Inc.*, 44 Fed. (2d) 790; *Westinghouse Air-Brake Co.* v. *Chicago Brake & Manfg. Co.*, 85 Fed. 786. Examples of language assigning all similar machines developed in the art as well as improvements on the original patented machine are found in *New Haven Sand Blast Co.* v. *Dreisbach*, 102 Conn. 169 (128 Atl. 320); *Birkery Manfg. Co.* v. *Jones*, 71 Conn. 113 (40 Atl. 917); *Printing & Numerical Registering Co.* v. *Sampson*, 44 L. J. Ch. 705, L. R. 19 Eq. 462 (32 L. T. 354). There is broad language in an early decision of the United States Supreme Court, *Littlefield* v. *Perry*,

21 Wall. (88 U. S.) 205, which might seem to justify plaintiff's contention:

"It is clear, also, that the idea which Littlefield had in mind, and which he was endeavoring by his devices to make practically useful, was greater economy in the use of the inflammable gases of coal to produce combustion. It is not important in this suit that the patent, which had been obtained, was not in fact suited for that purpose. It is sufficient that it was intended to be so. The subsequent devices, better adapted to the end to be accomplished, may therefore properly be regarded as improvements upon the original invention. They produce a stove doing the same thing which the first was intended to do, but doing it better. This is the proper office of an improvement."

However, it is quite clear from the rest of the opinion that the court was discussing an improvement on a particular machine. It was further said that:

"Without considering whether the invention upon which the patent of 1854 issued was not, in fact, the same to all intents and purposes as that of 1852, it is sufficient for the purposes of this case that it was an improvement upon it, or perhaps, more properly, that invention perfected. An assignment of an imperfect invention, with all improvements upon it that the inventor might make, is equivalent in equity to an assignment of the perfected results."

In *Aspinwall Manfg. Co.* v. *Gill, supra,* Mr. Justice Bradley said:

"That such assignments of future improvements upon a machine, in connection with the assignment of a patent for such machine, are valid, is settled, I think, by the case of *Littlefield* v. *Perry,* 21 Wall. (88 U. S.) 205, 226. A naked assignment or agreement to assign, in gross, a man's future labors as

an author or inventor,—in other words, a mortgage on a man's brain, to bind all its future products,— does not address itself favorably to our consideration. It is something like engagements of an expectant heir, binding the property which he may afterwards inherit, which are always looked upon with disfavor by the law. But where a man purchases a particular machine secured by a patent, and open to an indefinite line of improvements, it is often of great consequence to him that he should have the benefit of any future improvements that may be made to it. Without that, the whole value of the thing may be taken away from him the next day. A better machine might be made by the inventor, and sold to another party, which would make the machine acquired by the first purchaser entirely useless. These things happen every day. And hence it has become the practice, in many cases, to stipulate for all future improvements that may be made by the same inventor upon any particular machine which he induces a party to purchase from him, sometimes by way of license to use such improvements, and sometimes by way of purchase and ownership thereof.''

*Littlefield* v. *Perry, supra,* was discussed again in *McAuley* v. *Chaplin-Fulton Manfg. Co., supra:*

''In *Independent Electric Co.* v. *Jeffrey Manfg. Co.,* 76 Fed. 981, the court construed a contract to assign improvements, much more comprehensive in its terms than the one before us, to include only improvements upon the particular machine secured by the patent, and said, 'To hold that the assignment in question would pass all of Leckner's future mining machine patents, would, as counsel for complainant suggests, be equivalent to holding that these two assignments constituted, in fact, a mortgage on Leckner's brain, to bind all his future products, which is exactly the thing objected to by the court in *Aspinwall Manfg. Co.* v. *Gill,* 32 Fed. 697. In that case,

Justice Bradley made it clear that under the rule in *Littlefield* v. *Perry,* 21 Wall. (88 U. S.) 205, only improvements on the particular machine secured by the patent would pass by an assignment of a patent with future improvement.' ''

In construing a contract to assign improvements of certain patents (*Allison Bros. Co.* v. *Allison, supra*), the court said:

''It must be borne in mind that the defendant was not the first inventor of a cigarette machine. He invented improvements in such machines. An improvement might involve the addition of something which did not involve invention and yet might modify or affect the result of operation. The word is to be governed, necessarily, in its application, by the sense which the context lends to it. In these instruments, as the word is used, it conveys the idea of an improvement of or about the machine patented and in use by the firm, by way of addition or change and not of improvements in cigarette machines, which would be independent of the existing one. An improvement of a machine, or of a patent, which these instruments mention, cannot, in our opinion, be deemed to cover all future inventions of devices for the making of cigarettes by machinery. Without citing authorities, we think that they and the text books sustain the view that, in order to include, generally, future patents for new inventions, in the line of manufacturing a certain article, or product, the language of the contract must be very plain and evidence unmistakably that such an agreement was in the mind of the inventor, as well as in that of the purchaser from him of patent interests. That seems especially true in a case like this where, as before observed, the inventions sought to be appropriated are devices wholly independent of those covered by plaintiff's patents, and capable of being put into practice without using its machines, or infringing upon its patent rights. There is no difficulty, if the purchaser of an

interest in patent rights wishes to include any improvements by new processes and devices, which the inventor may thereafter discover and patent, in expressing such an agreement in simple and unambiguous language, which will exclude doubt as to so far-reaching a contract.''

We hold, then, that the trial court was in error in construing the contract before us now as contemplating any machine that defendant might produce which would compete with the very limited market built through the use of the Gonser patent. The terms of the contract do not preclude defendant from entering the somewhat competitive field of manufacture of meat-tenderizing machines, nor do we think the contract bars defendant from making use of methods in the public domain of the prior art, or gives plaintiff the right to a new invention which is different from and in no way infringes on the old invention. We do not say here that we approve or disapprove of a contract that is so worded as to express plaintiff's construction; we only hold that the language before us now is not so comprehensive.

Our next task is to determine whether defendant's machine is merely an improvement over plaintiff's invention, or more closely resembles devices covered by other patents. In *Atlas Press Co.* v. *Eames,* 206 Mich. 588, and in *National Steel Furnace Co.* v. *Watson,* 289 Mich. 605, we referred to the following statement in *Westinghouse Air-Brake Co.* v. *Chicago Brake & Manfg. Co., supra:*

''Identity of purpose and function of the two mechanisms controls the question of whether the one stands in the relation of an improvement to the other.''

The problem is one of identity: we must determine whether the identity of plaintiff's patent continues

or is lost in defendant's machine. Although many of the elements must be identical because of the nature of the art, at some point the departures may take the later device beyond the scope and identity of the original invention. We examine the devices and compare their respective purpose and function, but no yardstick rule or formula can be laid down for any decision—we can only state in a given case that in our judgment the kinship between the devices either persists or is lost.

We are met at the threshold of our investigation by the charge in plaintiff's bill that "the machine now being manufactured and sold by defendant is different from plaintiff's machine in mechanical construction and in results obtained." Although we would be warranted in construing the statement against the pleader, we nevertheless base our decision on examination of the machines and the law. We turn to the patent claims to determine "where the progress claimed by the patent begins and where it ends" (*Motion Picture Patents Co. v. Universal Film Manfg. Co.*, 243 U. S. 502 [37 Sup. Ct. 416, L. R. A. 1917 E, 1187, Ann. Cas. 1918 A, 959]), for the scope of every patent is confined to the invention described by its claims. *Brown v. Guild (The Cornplanter Patent)*, 23 Wall. (90 U. S.) 181, and cases cited in *Motion Picture Patents Co. v. Universal Film Manfg. Co., supra.* The state of the prior art must be examined in construing any claim to determine what progress has been made (1 Walker on Patents [6th Ed.], p. 314, § 230). Plaintiff's patent is not a primary patent of an original invention, but is merely an improvement on a known machine, and as a secondary patent it is given a narrower construction than would be given a primary patent. *Morley Sewing Machine Co. v. Lancaster,* 129 U. S. 263 (9 Sup. Ct. 299); *Kokomo Fence Machine Co. v. Kitselman,* 189 U. S. 8 (23 Sup. Ct. 521).

We are told that to determine the prior state of the art, we are not to examine inventions for breaking the stems and leaves of tobacco, for cocoanut graters, or for cutting and splitting corn, because they are not in an analogous art and were never designed or actually used for the purpose of tenderizing meat. Our search is not so limited. We think the correct rule has been stated by Circuit Judge Sanborn in *Mallon* v. *William C. Gregg & Co.*, 69 C. C. A. 48 (137 Fed. 68, 77):

"It is only when the new use is so recondite and remote from that to which the old device has been applied, or for which it was conceived, that its application to the new use would not occur to the mind of the ordinary mechanic, skilled in the art, seeking to devise means to perform the desired function, with the old machine or combination present before him, that its conception rises to the dignity of invention. 'If the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old device produce a new result, it may, at least, involve an exercise of the inventive faculty' (citations omitted)."

See, also, 1 Walker on Patents (6th Ed.), p. 96 *et seq.*, §§ 76 and 77. We think the slight adjustment of the rollers required to adapt these disintegrating machines to the partial disintegration process for tenderizing steak would occur to the mind of the ordinary mechanic of skill in the art.

We think the important claim of novelty in plaintiff's patent is in the "pairs of crushing gears with interposed cutter members and spacers, and the said cutter members carried by either shaft being constructed and arranged to extend between the pairs of gears on the other shaft and to the said spacers."

This element is absent in the second device, and for this reason, we think defendant's construction follows more closely the prior art as evidenced by the Chaussinand patent of 1897 (English), No. 9012, for bruising and distintegrating bread crust, meat, and other viands; the Borgfeldt patent of 1867, No. 68,597, for granulating tobacco; the Locke patent of 1871, No. 118,542, for an improved beefsteak-mangle; the Croft patent of 1876, No. 181,914, for a cocoanut grater; and the Porter patent of 1883, No. 285,512, for a corn-crushing and -splitting machine. Certain unexpired patents of machines for tenderizing or slitting meat have been brought to our attention, but further discussion would serve no useful purpose. The scheme of parallel rollers with sets of gears in each that interfit with the teeth of the opposite roller in the same plane or in adjacent planes is a common one. Defendant was at liberty to avail itself of the idea so long as the novelty of plaintiff's patent does not appear in the result, and in doing so defendant was acting beyond the orbit of its contractual engagement.

Because of the view we take, we need not consider the propriety of the part of the decree denying defendant's petition to reopen the case.

A decree in conformance with this opinion may be entered, setting aside the decree of the lower court and remanding the case solely for an accounting and adjudication of other rights plaintiff may establish under the original contract as far as it relates to plaintiff's invention, but not to the machine now being manufactured by defendant. Costs to defendant.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, McALLISTER, and WIEST, JJ., concurred.